CV 08 1322

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

BIANCO, J.

PLAINTIFF WILLIAM NEALY

TOMLINSON, M

- v -

DEFENDANT No "1   JEFFREY GRODER

114 OLD COUNTRY ROAD

SUITE 345

MINEOLA, N.Y. 11501

DEFENDANT   No "2   MICHAEL BERGER

LEGAL AID SOCIETY

1 HELEN KELLER WAY

HEMPSTEAD, N.Y. 11550

FILED
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y

★   MAR 28 2008   ★

LONG ISLAND OFFICE

COMPLAINT UNDER
THE CIVIL RIGHTS ACT
42 U.S.C 1983
JURY TRIAL REQUESTED

1.) PREVIOUS COMPLAINT

I HAVE FILED A PREVIOUS
LAWSUIT DEALING WITH SOME OF
THE FACTS IN THIS ACTION
RELATING TO MY IMPRISONMENT
IN FEDERAL COURT

1.) THE PARTIES TO PREVIOUS LAWSUIT
PLAINTIFF WILLIAM NEALY
DEFENDANTS JEFFREY GRODER
DEVANE & GRODER

2) FEDERAL COURT
   UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK

3) NO. 08 CIV 3071

4) CHIEF JUDGE KIMBA M. WOOD

5) DISPOSITION: DISMISSED AND NOT
   APPEALED: DISMISSED FOR FAIL-
   URE TO STATE A CLAIM UPON
   WHICH RELIEF CAN BE GRAN-
   TED.

6) DATE LAWSUIT WAS FILED
   OCTOBER 17, 2007

7) DATE OF DISPOSITION MARCH 3, 2008

PLAINTIFF IN THIS COMPLAINT

PLAINTIFF WILLIAM NERIX
#03A0773
SOUTHPORT C.F.
P.O. BOX 2000
PINE CITY, N.Y 14871

DEFENDANT No. 1             JEFFREY GRODER
                           114 OLD COUNTRY RD
                           SUITE 343
                           MINEOLA, N.Y 11501

DEFENDANT  No. 2             MICHAEL BERGER
                           LEGAL AID SOCIETY
                           1 HELEN KELLER WAY
                           HEMPSTEAD, N.Y 11550

## STATEMENT OF FACTS
### FACTS
### CLAIM No. 1

ON   APRIL 24, 2001 JEFFREY GRODER
WHILE  MASQUERADING AS MY ATTO-
RNEY  BEFORE THE HON. ADAM H.
MOSER  IN  PART 9 DISTRICT COU-
RT  IN  THE COUNTY OF NEW YO-
RK  LOCATED  AT 262 OLD COUNT-
RY  ROAD  WAIVED MY RIGHT
TO  APPEAR IN COURT FOR MY
FELONY  EXAM

THEREBY DEPRIVING ME OF MY CONSTITUTIONAL RIGHT TO BE PRESENT IN COURT AT ALL CRITICAL STAGES OF PROCEEDINGS CONDUCTED AGAINST ME AND RIGHT TO LIBERTY AND DUE PROCESS OF LAW. (SEE EXHIBIT NO.# 1 "COURT PROCEEDING FROM APRIL 24, 2001). I NEVER RETAINED JEFFREY GRODER AS MY ATTORNEY ON APRIL 24, 2001 NOR DID THE COURT APPOINT HIM MY CASE ON APRIL 24, 2001 (EMPHASIS ADDED). THE COURT AND PROSECUTORS A.D.A KIM PERCYE AND A.D.A WAIT JUNKER WAS FULLY AWARE OF THE FACT THAT ON APRIL 24, 2001 THAT I WAS A CLIENT OF THE LEGAL AID SOCIETY (SEE EXHIBIT NO.# 2 "COURT PROCEEDINGS OF ARRAIGNMENT) AND (SEE EXHIBIT NO.# 3 WAIVER SIGNED BY LEGAL AID ATTORNEY) YET ALLOWED JEFFREY GRODER TO MASQUERADE AS MY ATTORNEY AND WAIVE

MY STATUTORY, PROCEDURAL AND CONSTITUTIONAL RIGHTS. IT IS A STATE RESPONSIBILITY TO ENSURE AN INDIGENT DEFENDANT RIGHTS TO COUNSEL ON APRIL 18, 2001 THE LEGAL AID SOCIETY WAS APPOINTED MY CASE (SEE EXHIBIT No #2) ON APRIL 24, 2001 WHEN JEFFREY GROEGER WAIVED MY RIGHT TO APPEAR IN COURT I WAS STILL A CLIENT OF THE LEGAL AID SOCIETY (SEE EXHIBIT No #3) THE REPRESENTATION OF JEFFREY GROEGER WAS ILLEGAL BECAUSE JEFFREY GROEGER WAS NOT RETAINED BY ME OR APPOINTED MY CASE BY THE COURT NOR IS HE A MEMBER OF THE LEGAL AID SOCIETY. THEREFORE; IT IS NOT POSSIBLE FOR HIM TO HAVE BEEN ACTING IN THE CAPACITY OF A "RETAINED ATTORNEY OR A PUBLIC DEFENDER" (EMPHASIS ADDED). FURTHERMORE; IT IS NO COINCIDENCE TH-

AT ON THE SAME DAY APRIL 24, 20-
01 WHILE JEFFREY GRODER WAS
VIOLATING MY RIGHTS BEFORE TH-
E HON. ADAM H. MOSER (SEE EXHIB-
IT NO #1), THAT THE PROSECUTOR
A.D.A WRIT JUNKER WAS PRESE-
NTING THE CASE TO THE GRAND
JURY (SEE EXHIBIT NO #4) AND
THE LEGAL AID SOCIETY ATTO-
RNEY WAS SIGNING A WAIVER
WITHOUT MY KNOWLEDGE OR CO-
NSENT (SEE EXHIBIT NO #3). ON
APRIL 25, 2001 BEFORE THE HON.
ABBEY L. BORIAN THE LEGAL
AID SOCIETY WAS RELIEVED
(SEE EXHIBIT NO #5 PAGE 2-5)
AND THEN JEFFREY GRODER
WAS APPOINTED AND AFTER
HIS APPOINTMENT I STATED
THAT I DEMANDED A FELONY
EXAM AND THAT MY CONSTITU-
TIONAL RIGHTS WERE BEING
VIOLATED (SEE EXHIBIT NO #5
PAGE 7 LINE 18-25). AT NO
TIME DID JEFFREY GRO-
-DER TELL ME OR THE
COURT THAT HE WAS
INVOLVED IN MY CASE

THE DAY BEFORE ON APRIL 24, 2001.
I PROCEEDED TO TRAIL WITH JEF-
FREY GRODER AS MY ATTORNEY UNA-
WARE OF HIS PRIOR INVOLVEMENT
IN MY CASE BEFORE HIS APPOI-
NTMENT. THE HON. ABBEY L. BOKLAN
WAS NOT SUPPOSE TO APPOINT
JEFFREY GRODER MY CASE BECAU-
SE SHE WAS NOT EVEN THE JU-
DGE PERSIDING OVER MY CASE
(SEE EXHIBIT NO#5 PAGE 3 LI-
NE 6-7). A.D.A WALT TUNKER A-
RRANGED ▆▆▆ HIS APPOINTME-
NT WHICH CONSTITUTED PROSE-
CTUAL MISCONDUCT INTERRER-
RING WITH COUNSEIS REPRESE-
NTATION. I WAS HIGHLY PREJUD-
ICED BY THE APPOINTMENT OF
JEFFREY GRODER BY THE STATE
WHICH WAS DEMOSTRATED BY
WHAT OCCURED AT MY TRAIL.
THE PEOPLE TURNED OVER TO
JEFFREY GRODER THE NAME
AND LOCATION OF A PERS-
ON WHO WAS IDENTIFIED
BY THE VICTIM AS PASSING
A KNIFE TO ASSAULT HIM
30 DAYS PRIOR TO TRAIL

THIS INDIVIDUAL COULD HAVE EXONER-
ATED ME HAD HE BEEN CALLED AS
A WITNESS ON MY BEHALF, THE PEO-
PLE GAVE THE NAME AND LOCATION
OF THE ALLEGE ACCOMPLICE ON JA-
NUARY 28, 2002 BEFORE THE HON. VI-
CTOR ORT (SEE EXHIBIT NO #8 (A) P-
AGE 4 LINE 16-25, PAGE 5 LINE 1-6)
"IT SHOULD BE NOTED THAT THE AL-
LEGE ACCOMPLICE WAS IN THE CU-
STODY OF THE NASSAU COUNTY CORR-
ECTIONAL CENTER" AND COULD HAVE
EASILY BEEN SUBPEONED TO TESTI-
FY AT TRIAL. COUNSEL NOT ONLY
FAILED TO INVESTIGATE BY NOT
INTERVIEWING ANTOINE DIFFEO
BUT HE FAILED TO CONFERR
WITH ME ABOUT THE WITNESS
AND DURING TRIAL LIED
TO ME STATING THAT HE D-
ID NOT KNOW THE WITNESS
LOCATION. COUNSEL ALSO FAILED
CROSS EXAMINE THE VICTIM DO-
NALD CANZER ABOUT THE STAT-
EMENT HE GAVE DETECTIVE FEL-
AD STATING THAT ANTOINE
DIFFEO PASSED A KNIFE
TO ASSAULT HIM AND THAT

STATEMENT WAS TURNED OVER TO COUNSEL
PRIOR TO TRAIL ( SEE EXHIBIT NO " 8 (B))
" A NOTE OF DETECTIVE AZERO OF AN
INTERVIEW WITH THE VICTIM" COUNSEL
ALSO PLACED AN ALIBI WITNESS ON
THE STAND AT TRAIL VIRKI JEANS
WHO KNEW WOULD TESTIFY FALSELY
ABOUT A PHONE CALL SHE RECEIVED
FROM ME ON HER CELL PHONE ON
THE NIGHT OF THE ALLEGE CRIME
WHEN HER CELL PHONE RECORDS SH-
OWED THAT SHE RECEIVED NO SUCH
CALL AND COUNSEL WAS IN POSSESSION
OF HER CELL PHONE RECORDS PRI-
OR TO PLACING HER ON THE ST-
AND. JEFFREY GRODER SHOULD
HAVE NEVER BEEN APPOINTED MY
CASE AND HIS APPOINTMENT
AFTER APRIL 24, 3001 LEAD
TO ME BEING CONVICTED. JEFF-
REY GRODER VIOLATED MY CON-
STITUTIONAL RIGHTS UNDER T-
HE UNITED STATES CONSTITUTION
FILTH, SIXTH, AND FOURTEENTH
AMENDMENT AND HE WAS AWA-
RE THAT HE VIOLATED MY
RIGHTS ( SEE EXHIBIT NO " 6
PAGE 4 LINE 14 - 19). ALL

ATTACHED EXHIBITS SUPPORT THIS ACTION AGAINST JEFFREY GRODER FROM EXHIBIT NO #1 TO NO #11)

## CLAIM NO #3

ON APRIL 24, 2001 A MEMBER OF THE LEGAL AID SOCIETY MICHAEL BERGER WHILE ACTING IN CONCERT WITH A.D.A WALT JUNKER SIGNED A WAIVER OF MY CONSTITUTIONAL RIGHTS, " WITHOUT MY KNOWLEDGE OR CONSENT" (SEE EXHIBIT NO #3) THE WAIVER WAS FILLED OUT BY A.D.A WALT JUNKER THEN SIGNED BY THE LEGAL AID ATTORNEY MICHAEL BERGER WHO WAS FILLING IN FOR KENNETH ROSS, " COMPARE THE HAND-WRITING" ON ( EXHIBIT NO #3 AND EXHIBIT NO #7). ITS OBVIOUS THAT BOTH DOCUMENTS WAS FILLED OUT BY THE SAME INDIVIDUAL A.D.A WALT JUNKER, MICHAEL BERGER FAILED TO PROVIDE ME WITH EQUAL PROTECTION BY 1.) ALLOWING JEFFREY GRODER TO VIOLATE MY RIGHTS ON APRIL 24, 2001 BE-FORE THE HON. ADAM H. MOSER WHILE I WAS A CLIENT OF THE LEGAL AID SOCIETY AND

2) BY NOT HAVING ME PRODUCED FOR MY
FELONY EXAM THAT I DEMANDED AND
BY 3) MICHAEL BERGER SIGNING A
WAIVER WITHOUT MY KNOWLEDGE OR
CONSENT," WAIVING MY RIGHT TO A
FELONY PRELIMINARY HEARING,
GRAND JURY PRESENTATION, AND
FELONY TRAIL WHEN I EXPLICIT-
LY EXPRESSED TO OTHER MEMBERS
OF THE LEGAL AID SOCIETY THAT
I DEMANDED A FELONY EXAM. MIC-
HAEL BERGER WAS SUPPOSE TO PRO-
TECT MY RIGHTS BEFORE THE HON.
ADAM H. MOSER ( SEE EXHIBIT NO"1)
ON APRIL 24, 2001 BUT INSTEAD
OF REPRESENTING ME BEFORE
THE HON. ADAM H. MOSER ON
APRIL 24, 2001 HE WAS CONDU-
CTING A CONFERENCE OFF THE
RECORD BEFORE THE HON. AB-
BEY L. BOKLAN ( SEE EXHIBIT NO"
5 PAGE 2 (LINE 6-10) WHEN
THERE WAS NO COURT PROCE-
EDING CONDUCTED BEFORE
THE HON. ABBEY L. BOKLAN
ON APRIL 24, 2001 CONCER-
NING MY CASE. MICHAEL
BERGER ACTIONS VIOLATED

MY CONSTITUTIONAL RIGHTS UNDER THE
UNITED STATES CONSTITUTION FIFTH, SIX-
TH, FOURTEENTH AMENDMENT.

RELIEF SOUGHT: I ASK THIS COURT TO HAVE EACH DEFENDANT PAY A TOTAL AMOUNT OF $3,000,000 PER DEFENDANT

WILLIAM NEALY UNDER THE PENALTY OF PERJURY DEPOSES AND SAYS: THAT THE FOREGOING IS TRUE AND CORRECT.

William Nealy
PLAINTIFF
DATED 3/19/08

I DECLARE UNDER THE PENALTY OF PERJURY THAT ON THIS 19TH DAY OF MARCH 2008, I WILL DELIVER THIS COMPLAINT TO A CORRECTIONAL OFFICER TO MAIL TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

William Nealy
PLAINTIFF

# EXHIBIT 1

1    NASSAU COUNTY FIRST DISTRICT COURT

2    FELONY PART 9

     ------------------------------------x

3

                                       Ind. No.

4    THE PEOPLE OF THE STATE OF NEW YORK    8309/01

5                -against-

                                      Proceedings

6

7    WILLIAM NEALY,

                        Defendant.

     ------------------------------------x

8

                         April 24, 2001

9

                         262 Old Country Road

10                         Mineola, NY

11

12    B E F O R E:

                  HON. ADAM H. MOSER,

                         District Court Judge

13

14

15    A P P E A R A N C E S :

16

17    For the People:
               DENIS DILLON, ESQ.
               District Attorney, Nassau County

18           BY:  KIM PERCYZ, ESQ.,
               Assistant District Attorney

19

20    For the Defendant:
               DEVANE & GRODER, ESQS.
               Attorneys for Defendant

21           114 Old Country Road, Suite 345
           Mineola, NY  11501

22           BY:  JEFFREY GRODER, ESQ.

23                   *    *    *

                         JANICE M. CLARKE

24                         Official Court Reporter

25

ACF-10

1

2                              Proceedings

3                          (In open court:)

4                      (Defendant not present.)

5              THE CLERK:  Number 68, William Nealy.

6              MR. GRODER:  Requesting felony exam for

7      tomorrow.  Waive my client's appearance.

8      Continue felony exam demand for tomorrow.

9              THE CLERK:  Part nine, 4/25, felony

10     exam.

11                  *            *            *
       Certified that the foregoing is a true and
12     accurate transcript of the original
       stenographic minutes in this case.

13

14

15

16                    JANICE M. CLARKE,
                      Official Court Reporter

17

18

19

20

21

22

3

4


                                ACF-10

DISTRICT COURT   :   NASSAU COUNTY

FIRST DISTRICT   :   ARRAIGNMENT A

- - - - - - - - - - - - - - - - - - - -X

THE PEOPLE OF THE STATE OF NEW YORK,

        -against-         Index No. 008309/01
                         008310/01

WILLIAM NEALY,

                Defendant.

- - - - - - - - - - - - - - - - - - - -X

              April 15, 2001
              Hempstead, New York


B E F O R E :   HON. DAVID A GROSS
              DISTRICT COURT JUDGE


A P P E A R A N C E S :

              HON. DENIS DILLON
              NASSAU DISTRICT ATTORNEY
              99 Main Street
              Hempstead, New York
              BY:  MATTHEW STRAUS, ESQ.

              MATTHEW MURASKIN, ESQ.
              ATTORNEY FOR THE DEFENDANT
              1 Helen Keller Way
              Hempstead, New York
              BY:  BARBARA RANEY, ESQ.


              MINUTES OF ARRAIGNMENT


              REPORTED BY:
              CYNTHIA FAVATA
              Official Court Reporter

# EXHIBIT 2

DISTRICT COURT  :  NASSAU COUNTY

FIRST DISTRICT  :  ARRAIGNMENT A

- - - - - - - - - - - - - - - - - - - - - -X

THE PEOPLE OF THE STATE OF NEW YORK,

       -against-           Index No. 008309/01
                             008310/01

WILLIAM NEALY,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - -X

            April 15, 2001
            Hempstead, New York

   B E F O R E :   HON. DAVID A GROSS
                DISTRICT COURT JUDGE

   A P P E A R A N C E S :

                HON. DENIS DILLON
                NASSAU DISTRICT ATTORNEY
                99 Main Street
                Hempstead, New York
                BY:  MATTHEW STRAUS, ESQ.

                MATTHEW MURASKIN, ESQ.
                ATTORNEY FOR THE DEFENDANT
                1 Helen Keller Way
                Hempstead, New York
                BY:  BARBARA RANEY, ESQ.

                MINUTES OF ARRAIGNMENT

                REPORTED BY:
                CYNTHIA FAVATA
                Official Court Reporter

2

1           (The rights were read in the courtroom

2      preceding this arraignment.)

3           THE CLERK:  William Nealy.

4           THE POLICE OFFICER:  Two files, one

5      felony file.

6           MS. RANEY:  Screening.

7           I waive a public reading, but not the

8      rights  with respect to the jurisdictional

9      sufficiency of the Information and demand a

10     conference in Part 9.

11          At this time I am notifying the District

12     Attorney pursuant to CPL Section 190.50, of

13     my client's intention to testify before the

14     Grand Jury.  Please acknowledge receipt.

15          MR. STRAUS:  People acknowledge receipt.

16          THE CLERK:  No NYSIS available.

17          MS. RANEY:  With respect to the custody,

18     your Honor, my client is thirty years old,

19     lifetime resident of West Hempstead where he

20     lives with his father.  He is currently in a

21     drug program at family services.  It is a drug

22     and alcohol program.  He goes there from 9:00

23     a.m. to four o'clock every day, five days a

24     week.  He is also scheduled to begin at Home

25     Depot in Hempstead.

3

1          He does have contact with the criminal

2     justice system.  He has indicated to me that

3     he is currently reporting to his parole officer

4     without any incident.  If your Honor is inclined

5     to set some bail in this case, I ask it be done

6     reasonable.  No more than $4,000.

7          THE COURT:  People?

8          MR. STRAUS:  Yes, your Honor.  First of

9     all, we are requesting a full stay-away Order

10    of Protection to be issued on behalf of the

11    complainant.  Complainant is here in the

12    courtroom.  He stands at the rail with his mother.

13    I have spoken with each one of them about this

14    incident.  They are requesting a stay-away Order

15    of Protection to be issued.  The complainant

16    received a number of stitches from a long

17    laceration that goes from his ear down below his

18    ear along his face.  The defendant is charge with

19    a D felony assault.  He does have prior assault

20    in his history, in his criminal history.  He also

21    has numerous warrants.  He has an escape charge

22    and bail jumping charge.

23          THE DEFENDANT:  Excuse me - -

24          MR. STRAUS:  Also attempted murder charge

25    there as well.  We are going to ask for $150,000

4

1       bail be posted.  We are also asking, based on the

2       fact that the complainant's brother is a Nassau

3       County Sheriff and works in the jail, that the

4       defendant be housed in the main area of the jail so

5       that they not meet, not have any contact.

6               THE COURT:  Sounds reasonable to me.  I will

7       set bail at $150,000.

8               THE POLICE OFFICER:  Two bails.

9               THE COURT:  On each, we are going to - -

10      $150,000 cash on each.  Do you want a bail

11      alternative?

12              MS. RANEY:  Yes.

13              THE COURT:  $300,000 bail on each.  In

14      addition to that, I am signing this Order of full

15      Order of Protection.  Please understand, an Order

16      of Protection is an Order of this Court, sir.  For

17      violation of this Order is a violation of an Order

18      of this Court, carries with it the potential that

19      you could be charged with an additional crime in

20      addition to whatever you have done to get yourself

21      arrested on the Order of Protection.

22              As far as do you need an Order to me

23      relating to the circumstances of the prison?  Is

24      that something that I would do?

25              MR. STRAUS: I am not sure, Judge.

5

1          THE COURT:  Mr. Nealy, listen up.  Stay away

2     from Donald Lanier, from his home, school, business

3     and place of employment.  Stay away from him

4     wherever he may be.

5          Refrain from communication, by mail or by

6     telephone, e-mail, voice mail or other

7     electronic means with Donald Lanier.

8          Refrain from assault, stalking, harassment,

9     menacing, reckless endangerment, disorderly

10     conduct, intimidation, threats or otherwise

11     interfering with the victim.

12          Surrender all firearms owned and possessed

13     and do not contact him wherever he may be, directly

14     or indirectly.

15          Do you understand?

16          THE CLERK:  You can delete the firearms

17     portion of the terms of the temporary Order of

18     Protection.

19          Do you acknowledge receipt of the temporary

20     Order of Protection, Mr. Nealy?

21          THE DEFENDANT:  Yes.

22          THE CLERK:  Defendant is being served with a

23     copy of the temporary Order of Protection, police

24     department is being served with a copy and

25     District Attorney's office has been served with a

6

1     copy. The complaining witnesses is present in the

2     Court. He is also being served with a copy of the

3     temporary Order of protection.

4         Both cases are on in Part 9 on April 18.

5             *          *          *

6         I hereby certify that the above and

7     foregoing is a true and accurate transcript

8     of my stenographic notes.

9

10

11             CYNTHIA FAVATA, OCR

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 3

WAIVER OF SPEEDY PRESENTMENT/PRELIMINARY HEARING/SPEEDY TRIAL

People vs. _William Nealy_

Felony No.(s). _8309/01 and 8310/01_

Date _April 24, 2001_

    I, _Michael Berger_, on behalf of my client, _William Nealy_, hereby waive all my client's speedy trial rights, speedy preliminary hearing rights and speedy grand jury presentment rights, with regard to the above case and all joinable offenses from _April 24, 2001_ until withdrawn in writing.

    I also consent to and request this adjournment.

                                  Attorney for Defendant

# EXHIBIT 4

37

1   4-24-01            P.O. J. Gross

2               (The witness entered the grand jury

3   room.)

4               MR. JUNKER:   Please take the stand,

5   remain standing.  We have every grand juror present

6   who was present for the previous testimony,

7   correct?

8               A JUROR:   Yes.

9               MR. JUNKER:   Please raise your right

10  hand to be sworn and face the grand jury foreperson.

11              (The witness complied.)

12              THE FOREPERSON:   You do swear that the

13  evidence you shall give to the grand inquest upon

14  this complaint against William A. Nealy shall be the

15  truth, the whole truth and nothing but the truth, so

16  help you God?

17              THE WITNESS:   Yes

18  EXAMINATION BY

19  MR. JUNKER:

20       Q.   Please be seated.  Pull yourself up to

21  the mic if you need to.  In a loud, clear voice,

22  please state your name, spelling the last, and give

23  your badge number and command assignment.

24       A.   Police Officer Harold Gross, G-R-O-S-S,

25  shield number 118 with the Village of Hempstead

39

1    4-24-01              P.O. J. Gross

2    Street and Jackson Street, actually to an area near

3    Hempstead District Court in Hempstead, that area.

4    Were you present in your vehicle on that date?

5           A.   Yes.

6           Q.   Were you partnered up that date?

7           A.   Yes.

8           Q.   Who was your partner?

9           A.   Officer Troy Wright.

10          Q.   The vehicle that you were in, was that a

11   fully marked police car?

12          A.   Yes.

13          Q.   The lights, markings, everything?

14          A.   Yes.

15          Q.   At any point around 4:21 a.m., were you

16   approached by an individual or individuals regarding

17   a crime that had taken place on April the 10th?

18          A.   Yes.

19          Q.   What were you told at that time?

20          A.   I was approached by two male blacks who I

21   know as Patrick Lanier and Donald Lanier that his

22   brother was just slashed in the face earlier during

23   the week by a male black subject which they had

24   pointed out to us which started walking away from us

25   when he was in the parking lot by Whistler's.

R.D. GLEN & ASSOCIATES, A Spherion Agency
(516) 746-1888   (516) 739-0002

40

1    4-24-01              P.O. J. Gross

2        Q.   Had he pointed to a male black that was

3    nearby?

4        A.   Yes.

5        Q.   What did you and your partner do when you

6    were informed of that?

7        A.   Once we were informed of that, we then

8    approached the male black just about on Center

9    Street and Main Street.

10       Q.   Will you please describe to the grand

11   jury how this approach took place, what happened

12   during this?

13       A.   When the complainants told us that the

14   male black had slashed his brother earlier during

15   the week was pointed out, we had then wanted to know

16   which one he was.  And they pointed him out.  And he

17   started walking away from us real fast.  Then we

18   drove our RMP to stop him to investigate the

19   incident that happened earlier during the week at

20   which time then my partner, which was Officer

21   Wright, was driving the car, gets out of the car,

22   and he starts speaking to the defendant.

23            And the defendant stated to him that he

24   didn't do anything and started walking backwards

25   from us.  And as our partner tried to interview him

R.D. GLEN & ASSOCIATES, A Spherion Agency
(516) 746-1888   (516) 739-0002

41

```
 1    4-24-01            P.O. J. Gross

 2    more, he says, "Get your fucking hand off of me.

 3    Don't touch me."  At that time I get out of the car,

 4    and the defendant then replied again, "Don't fucking

 5    touch me," and turned around, and there was a foot

 6    pursuit.

 7         Q.    He so ran?

 8         A.    Yes.

 9         Q.    During that foot pursuit, did you pursue

10    on foot, or did you remain in the vehicle?

11         A.    I remained with the vehicle and got in

12    the car.

13         Q.    What did you do when you got in the

14    vehicle?

15         A.    When I seen the subject run across the

16    parking field in the rear of 99 Main Street, which

17    is District Court, I then drove down Center Street

18    to North Franklin to put him off at the pass.

19         Q.    When you got to that location, did you

20    see the defendant and your partner in pursuit?

21         A.    Yes.

22         Q.    What did you do at that point?

23         A.    At that time then I pulled over to the

24    curb and got out and gave foot pursuit and tackled

25    him to the ground.
```

42

1   4-24-01                P.O. J. Gross

2          Q.   And your partner, was he also in full

3   uniform as you are today?

4          A.   Yes.

5          Q.   When you took defendant to the ground,

6   was the defendant told he was under arrest?

7          A.   Yes.

8          Q.   What did the defendant do?  Did he comply

9   with your orders?

10          A.   No.  He then pushed me off of him, and we

11   started wrestling on the ground.

12          Q.   At this point were you attempting to

13   handcuff him?

14          A.   Yes.

15          Q.   Did he comply with being handcuffed?

16          A.   No.

17          Q.   Please describe to the grand jurors what

18   happened next.

19          A.   At that time while I was still wrestling

20   with him on the ground, my partner assisted me

21   trying to get him handcuffed at which time we had to

22   call for further assistance which about six or seven

23   other officers came to the scene.

24               And we still had a hard time trying to

25   get him handcuffed.  He was blurting out saying he

R.D. GLEN & ASSOCIATES, a G-L-...

43

1   4-24-01          P.O. J. Gross

2   was not going any fucking way.

3          Q.   At some point were you able to handcuff

4   him?

5          A.   Yes.

6          Q.   And he was subsequently identified as

7   William Nealy?

8          A.   Yes.

9          Q.   He was taken to police headquarters and

10  processed?

11         A.   Yes.

12         Q.   Prior to taking him to be processed, did

13  someone retrieve the victim and bring him to the

14  arrest scene?

15         A.   Yes.

16         Q.   Without telling us anything that was said

17  at that point, was the victim placed in a position

18  where he would have an opportunity to view the

19  defendant?

20         A.   Yes.

21         Q.   Subsequent to that, he was transported to

22  headquarters for processing?

23         A.   Yes, he was.

24              MR. JUNKER:    I have no further

25  questions for this witness at this time.


            R.D. GLEN & ASSOC.

# EXHIBIT 5

STATE OF NEW YORK : NASSAU COUNTY

COUNTY COURT PART I

- - - - - - - - - - - - - - -X

THE PEOPLE OF THE STATE OF NEW YORK, :

              -against-       :

WILLIAM NEALY,             :

             Defendant.    :

- - - - - - - - - - - - - - -X
                262 Old Country Road
                Mineola, New York
                APRIL 25, 2001

B E F O R E:
         HON. ABBEY L. BOKLAN,
               County Court Judge.

APPEARANCES:

         HON. DENIS DILLON,
         Nassau County District Attorney
         By: WALT JUNKER, ESQ,
            Assistant District Attorney
                For the People


         RONALD BEKOFF, ESQ. and
         KENNETH ROSS, ESQ. - a.m. Session
         JEFF GRODER, ESQ. - p.m. Session
               For the Defendant


           Minutes of Proceedings


                Hanni J. Planos, CSR
                Official Court Reporter

ACE-10

1  THE CLERK:  Grand Jury matter.

2  Appearances, please.

3  MR. ROSS:  Kenneth Ross, Legal Aid.

4  MR. JUNKER:  Walt Junker for the People.

5  MR. BEKOFF:  Ronald J. Bekoff.

6  THE COURT:  I am not the Judge for your

7  case; I'm the Grand Jury Judge.  I had adjourned this

8  case at the request of Mr. Mike Berger of the Legal

9  Aid Society who was representing you yesterday

10  because of a witness.

11  Today Mr. Ross came in with an application.

12  Mr. Ross, you can make the application.

13  MR. ROSS:  Yes, Judge.

14  After speaking with Mr. Berger and my

15  supervisor this morning it was determined that there

16  was an ethical conflict that would prevent us from

17  continuing on this case.  For that reason we would

18  ask counsel outside of my office to represent

19  Mr. Nealy.

20  THE COURT:  Mr. Nealy, do you understand

21  what your attorney, Mr. Ross, just said?

22  THE DEFENDANT:  Well, I don't know what

23  conflict they had.

24  THE COURT:  I'm going to give you a moment,

25  Mr. Ross, to speak to your client.

People v. Nealy                                    3

1      MR. BEKOFF:  Judge, could my appearance be

2   waived?  Can I take off?

3      THE COURT:  It's Mr. Petrillo who will be

4   handling this.

5      MR. BEKOFF:  I will be picked up in six

6   minutes.

7      THE COURT:  You were accepting the case on

8   behalf of Mr. Petrillo.

9      You're excused.  Thank you very much.

10      MR. BEKOFF:  Yes.

11      MR. JUNKER:  I have assured Mr. Bekoff that

12   I will call Mr. Petrillo and update him on the status

13   of my case.

14      THE COURT:  Mr. Nealy, do you understand

15   now, has Mr. Ross explained to you the problem?

16      THE DEFENDANT:  I understand what he's

17   saying, but again, I mean, what he's telling me, I

18   have no knowledge of that.  I understand what he's

19   saying.

20      THE COURT:  All right.  When an attorney of

21   the high repute as Mr. Ross tells me they have an

22   ethical problem with a client, I will relieve them.

23      THE DEFENDANT:  Can we address the issue?

24      MR. ROSS:  It's not something that can be

25   addressed.

People v. Nealy                    4

1        I told him what transpired and why we can't

2   represent him.  I explained to him that the

3   information we have will not be communicated to the

4   Judge or the new attorney, so the new attorney will

5   come in fresh without this dilemma.

6        I know what he has to say, that he's

7   innocent of the crime.  That's not the issue before

8   us today.

9        THE DEFENDANT:  I know what the issue is.

10  I know.  She told me what the issue was.  The problem

11  is I want to go to the Grand Jury today.

12        THE COURT:  You are going to the Grand Jury

13  today.  But I just wanted you to know why you

14  suddenly will have a different attorney.

15        I asked Mr. Bill Petrillo, who Mr. Ross

16  will tell you is a very fine attorney, who

17  unfortunately is someplace else right now, if he will

18  accept the assignment; he said he will.  And he will

19  be back this afternoon and will be talking to you and

20  will represent you this afternoon.

21        THE DEFENDANT:  What about my witness?  Has

22  she testified already?

23        THE COURT:  I don't think so.  I'm not up

24  there in the Grand Jury.  Mr. Junker is the assistant

25  district attorney who is putting the case in the

People v. Nealy                           5

1      Grand Jury.  I will ask Mr. Junker on or attorney.

2              THE DEFENDANT:  She can't keep taking off

3      from work and testify.

4              THE COURT:  Mr. Junker?

5              MR. JUNKER:  I will be updating the new

6      attorney on the status of the case.  And what you

7      asked me, whether someone has or has not testified --

8              THE COURT:  Yes, I'm asking whether he had

9      a witness testify in the Grand Jury yet.

10             MR. JUNKER:  No, Judge.  The answer is no,

11     she hasn't testified yet.

12             THE DEFENDANT:  All right.

13             THE COURT:  Your attorney will be here this

14     afternoon, and he will be representing you.

15             Thank you very much.

16             We'll relieve you, Mr. Ross.

17             (Recess.)

18                 *       *       *

19             AFTERNOON SESSION

20                 *       *       *

21             MR. GRODER:  For the defendant, Jeff

22     Groder.

23             THE DEFENDANT:  Grand Jury matter of

24     William Nealy.

25             Appearances for the record, please.

People v. Nealy                                6

1          MR. JUNKER:  Walt Junker, for the People.

2          THE CLERK:  Are you William Nealy?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Mr. Nealy, we got a call from

5    Mr. Junker about 3 o'clock.

6          MR. JUNKER:  2:30, Judge.

7          THE COURT:  -- 2:30, that he received a

8    call from Mr. Petrillo that he couldn't come today or

9    tomorrow.  We then immediately started to find you

10   another attorney.

11         Happily -- and I thank you, Mr. Groder --

12   he agreed to come back to the courthouse, and he has

13   now arrived.

14         Mr. Groder, you'll accept the assignment of

15   this case?

16         MR. GRODER:  Of course, Judge.

17         THE COURT:  I appreciate it.  You are

18   hereby assigned.

19         Mr. Junker, what's happening?

20         MR. JUNKER:  Judge, given the fact that we

21   had to get a new attorney and this is the last case

22   for the Grand Jury, I'm going to have to put it in

23   tomorrow because we couldn't wait for the Grand Jury

24   anymore.

25         THE COURT:  They're gone?

People v. Nealy                    7

1          MR. JUNKER:  Yes, they were done 11 o'clock

2   waiting for this case.

3          And when I found out that the Court would

4   not be available until about 2 or 2:30 to discuss the

5   problems I was having with Mr. Petrillo, I knew this

6   would not be resolved until very late.  I can't have

7   the Grand Jurors waiting.

8          I got a speedy trial still from the prior

9   attorney.

10         I informed the Court as soon as I could.

11         THE COURT:  They are coming back tomorrow?

12         MR. JUNKER:  Yes.

13         My case is in.  We are just waiting to see

14   whether or not the defendant will be testifying.

15         THE DEFENDANT:  I don't know how they could

16   wait to decide that when I've told him I want to

17   request --

18         First of all, I request a felony exam.

19   They went over that.  I don't know.  They violated my

20   due process, put me in for the Grand Jury.  I told

21   them I would be willing to testify before the Grand

22   Jury.

23         I don't know what's the problem.  And they

24   didn't tell me the ethical problem.

25         THE COURT:  The ethical problem was for

1    your other attorney.

2              THE DEFENDANT:  I feel this is some type of

3    game being played with him.  Some lawyer told me cop

4    out two to four, told me don't testify, alibi witness

5    shouldn't be testifying.

6              Someone called my alibi witness, told her

7    to lie.

8              THE COURT:  I can't answer you for what I

9    don't know.

10             What I know is basically at this point it

11   must be  Mr. Berger who talked to you yesterday

12   because he came in yesterday and requested of the

13   Court to adjourn it to today for your alibi witness

14   to come in.  He wanted to talk to your alibi witness

15   and you before either of you testified before the

16   Grand Jury.  The assistant district attorney opposed

17   it; they wanted you to testify yesterday.

18             THE DEFENDANT:  And I was ready.  They

19   brought me up to the court.

20             This guy was sitting in the courtroom with

21   an officer, uniformed officer.

22             I don't know who this guy is.  They had me

23   sitting up in there.  Some identification thing is

24   going on without me.  I don't know what's going on.

25             MR. JUNKER:  I should inform the Court,

1       Judge --

2                   THE COURT:  Can I finish?

3                   Mr. Berger is a member of the Legal Aid

4       Society, Major Offense Bureau, as is Mr. Ross.

5       Mr. Ross was on jury duty and Mr. Berger was

6       substituted.

7                   Mr. Berger fought adamantly for an extra

8       day to put this case in, over the opposition of the

9       district attorney, and I granted that.  Beyond that I

10      don't know anything.

11                  Mr. Junker?

12                  MR. JUNKER:  I should inform the Court that

13      I did offer Mr. Berger the option of having the DA's

14      office issue a Grand Jury subpoena for the alibi

15      witness that has been referred to.  He declined that

16      offer.

17                  She did, however, come in today and did not

18      stay once things got delayed.

19                  I extended a similar offer to defendant's

20      new counsel, Mr. Groder.

21                  I just wanted to put that on the record.

22                  THE COURT:  Thank you, Mr. Junker.

23                  Mr. Groder, I can't bring back a Grand Jury

24      that I didn't know was gone.  They'll be here

25      tomorrow and we'll produce your client.

People v. Nealy                                10

1          Do you want a Grand Jury subpoena for the

2   witness?

3          MR. GRODER:  Judge, since I'm obviously

4   coming in a little late in the game, from what my

5   client has been saying to me, both in conference and

6   on the record, I would take the district attorney up

7   on that offer.

8          THE COURT:  We'll see you tomorrow.

9          You may not see me.  If there is no problem

10  you'll be going directly into the Grand Jury.

11         THE DEFENDANT:  So tomorrow everyone has

12  testified at the Grand Jury, me and my alibi witness?

13         THE COURT:  And any rebuttal witness the

14  People would call after that, because the complaining

15  witness --

16         The People's direct case is already in?

17         MR. JUNKER:  Correct, Judge.

18         THE COURT:  They have already testified.

19         MR. JUNKER:  And I'll be happy to subpoena

20  the alibi witness.

21         THE DEFENDANT:  She don't need to be

22  subpoenaed.

23         THE COURT:  If you don't subpoena her and

24  she doesn't show up I'm not going to adjourn it

25  again.  If she's subpoenaed --

1      THE DEFENDANT:  She was here.  They keep

2  putting her off.

3      THE COURT:  Listen, if you don't issue a

4  subpoena on her there is no control.  She can come in

5  voluntarily if she wants to.  If I issue a subpoena

6  she'll be forced to come in.

7      You don't want her to come by subpoena?  Do

8  you --

9      Let me finish.

10      You want her to come in voluntarily, and if

11  she doesn't show up, that will be it.

12      THE DEFENDANT:  I'm saying, how the case

13  is, she's been coming since Monday, willing to

14  testify, ready to testify.  How can you tell me now

15  she don't come, it's on me?  How is that?

16      THE COURT:  Mr. Groder, I leave it to you

17  and your client to make the determination with

18  Mr. Junker, whether you want her subpoenaed or not.

19  I will not adjourn it for the alibi witness if he

20  doesn't subpoena her.

21      MR. GRODER:  I understand.  And I would ask

22  the district attorney to subpoena her.

23      I also advise my client that even though it

24  is a late hour, I understand that he'll be back here

25  tomorrow to testify, I'll go see him tonight at the

Case 2:08-cv-01322-JFB-AKT   Document 1   Filed 03/28/08   Page 46 of 123 PageID #: 46

1    jail so we can more fully discuss the case.

2            THE DEFENDANT:  He doesn't have the

3    address.

4            THE COURT:  You're talking about the

5    district attorney?

6            THE DEFENDANT:  My alibi witness.  They

7    don't know her address.  He had her job number, phone

8    number.

9            MR. GRODER:  Give the address.

10            THE DEFENDANT:  144 Fairview, Hempstead.

11            MR. JUNKER:  Is there an apartment number?

12            THE DEFENDANT:  It's a house.  Hempstead,

13    New York.

14            THE COURT:  Do you have the name?

15            THE DEFENDANT:  Vicky Lewis.

16            THE COURT:  Do you want a phone number?

17            THE DEFENDANT:  481-6939.

18            THE COURT:  Who is going to arrange for the

19    defendant to be brought tomorrow?

20            Mr. Junker, you'll do that?

21            MR. JUNKER:  The Grand Jury already

22    arranged for that.  I will take care of that.

23            THE COURT:  I don't want the alibi witness

24    and not the defendant.

25            MR. JUNKER:  I will double-check, Judge.

13

## CERTIFICATION

I, Hanni J. Planos, certify the foregoing to
be a true and accurate transcript of my stenographic
notes.

_____
Official Court Reporter

ACF-10

# EXHIBIT 6

STATE OF NEW YORK  :  NASSAU COUNTY

COUNTY COURT PART XII

- - - - - - - - - - - - - - - - - -X

THE PEOPLE OF THE STATE OF NEW YORK, :

               -against-          :  IND. # 973N/01

WILLIAM NEALY,                 :

               Defendant.    :

- - - - - - - - - - - - - - - - - -X

                          262 Old Country Road
                          Mineola, New York
                          September 3, 2002

B E F O R E:
               HON. RICHARD A. LaPERA,
                    County Court Judge.


APPEARANCES:

               HON. DENIS DILLON,
               Nassau County District Attorney
               By:  WALT JUNKER, ESQ.
                   Assistant District Attorney
                          For the People


               JEFF GRODER, ESQ.
                       For the Defendant


                   -      -      -


             Minutes of Proceedings


                   -      --      -



                       Hanni J. Planos, CSR
                       Official Court Reporter

1        THE CLERK:  This is People versus William

2    Nealy, Indictment 973N of '01.

3        Appearances, please.

4        MR. JUNKER:  Walt Junker, appearing for the

5    People, your Honor.

6        MR. GRODER:  Jeff Groder, Devane and

7    Groder, 114 Old Country Road, Mineola.

8        THE COURT:  Mr. Groder, the district

9    attorney has filed an application to determine

10   whether defendant is eligible for persistent

11   felony offender, a second violent felony

12   offender or a second felony offender.

13       MR. JUNKER:  Also the primary application

14   is to have him classified as persistent violent

15   felony offender in the alternative, if he were

16   found of the top status.

17       THE COURT:  Your papers say eligible

18   persistent felony offender.

19       MR. JUNKER:  May I just have a moment,

20   Judge?

21       MR. JUNKER:  Judge, unless I'm mistaken --

22       THE COURT:  You're right.  Okay.  The top

23   part.  You're correct.  Persistent violent

24   felony offender.  And you have the "in the

25   alternative."

1          MR. JUNKER:  Correct, Judge.

2          THE COURT:  You want to make the

3     application?

4          MR. GRODER:  Yes, I have an application to

5     be relieved from the case.

6          I had visited Mr. Nealy last week at the

7     Rikers Island Correctional Facility.  We had

8     approximately a ten-minute visit.  Towards the

9     conclusion of that visit he indicated he did

10    not want me to represent him any further at the

11    hearing, which was coming up today, at which

12    time I was getting ready to leave.

13         At that time Mr. Nealy reached through the

14    cage which he was in, separating us, and threw

15    my tape recorder, which I had previously

16    obtained authorization to bring in so he could

17    hear tapes involved in the case, threw that

18    across the room and threatened to kill me

19    numerous times, saying that he would hunt me

20    down and find me, saying he would blow my head

21    off, that I should relocate; things of that

22    nature.  I feel that based upon those threats I

23    cannot longer represent Mr. Nealy.

24         I think the case law is also pretty clear

25    that, you know, given those circumstances, it's

1    improper at this point for me to represent him.

2        THE COURT:  DA, do you have any position?

3        MR. JUNKER:  We have no objection, Judge.

4    We rely on the discretion of the Court.  I'm

5    aware of the same case law and am in agreement

6    with what Mr. Groder mentioned.

7        THE COURT:  You're relieved.

8        MR. GRODER:  I have two requests, one of

9    which I already discussed with Mr. Junker.  One

10    is to be listed as a person to be notified in

11    the event that Mr. Nealy is released so that I

12    can make arrangements, whatever arrangements I

13    need to make to protect myself.

14        Also I have a standing request, Judge, for

15    any and all minutes that are generated from now

16    until the end of the case, in case of any

17    subsequent legal action by Mr. Nealy against

18    myself.

19        I feel that I'll need those in order to

20    possibly defend against a civil suit.

21        THE COURT:  That application is granted.

22        MR. GRODER:  Thank you.

23        THE COURT:  Mr. Nealy, at this particular

24    time your attorney has made a motion to be

25    relieved because he feels that he can't serve

1 as your attorney anymore.

2  My question to you is, can you afford a new

3 attorney?

4  THE DEFENDANT: No.

5  MR. JUNKER: Judge, if I may, at this point

6 the People renew our application that we made

7 prior to the trial of this matter; that would

8 be that Mr. Nealy does have the funds to pay

9 for an attorney, and possibly even to pay for

10 the services that Mr. Groder already rendered

11 on his behalf.

12  I again mention to the Court that it's my

13 understanding, after speaking to the parole

14 officers that were involved in this matter,

15 that when Mr. Nealy was released 30 day prior

16 to the event that he's now been convicted of,

17 at that time his funds at the Great Meadow

18 Correctional Facility were in the amount of

19 $9,743.35.

20  It's also my understanding from parole that

21 there is a possibility that he had additional

22 funds that were bequeathed to him when his

23 mother passed away, possibly totaling up to

24 $30,000.

25  We would ask that Mr. Nealy be required to

1   furnish details of information as to what

2   happened to that money, where he banks --

3   things of that nature -- prior to a new

4   attorney being assigned.

5       There was certainly testimony about $30,000

6   additional, additional money, during the course

7   of the trial.

8       THE COURT:  What the DA is saying, he

9   indicates that you may have money to pay for an

10  attorney.

11      THE DEFENDANT:  I have no money.  That was

12  over two years ago.

13      THE COURT:  I'm sorry?

14      THE DEFENDANT:  He's talking about over two

15  years ago, and I have nothing.

16      THE COURT:  I will not grant the DA's

17  application.  However, I'm going to put this

18  on -- I'm going to adjourn this.  I'm going to

19  look into it further.

20      We'll get to that money one way or another,

21  either by civil judgment; somewhere along the

22  line.  So I'm sure we'll get those funds.

23      However, I got to move this along.

24      Do you understand that this is a hearing to

25  determine whether you are a persistent violent

 1          felony offender or in the alternative eligible

 2          persistent felony offender or a second violent

 3          felony offender or a second felony offender?

 4          Do you understand that?

 5               THE DEFENDANT:  I was never given notice.

 6               THE COURT:  But your attorney was given

 7          notice.

 8               THE DEFENDANT:  He never issued me a copy

 9          of whatever.

10               THE COURT:  Do you understand that if

11          you're found guilty as a persistent violent

12          felony offender I can sentence you to 25 to

13          life.  Do you understand that?

14               THE DEFENDANT:  Do I understand that?  I'm

15          not clear on the guidelines of all that.

16               THE COURT:  I'm just telling you.  I mean,

17          you give your attorney a hard time, and right

18          now, you don't have an attorney.  If I find you

19          guilty of persistent violent felony offender, I

20          can sentence you to 25 years to life.

21               THE DEFENDANT:  My lawyer withheld

22          information from me, and evidence from me.  I

23          could have gotten a plea.  This is why I don't

24          want him to represent me, because I can get a

25          life sentence.

1         THE COURT:  Well, he gave you good

2  representation during the trial.

3         THE DEFENDANT:  But he withheld

4  documentation from me.

5         THE COURT:  What date do you want to put

6  this on for?

7         MR. JUNKER:  I'm going to make one inquiry

8  of the Court.

9         THE COURT:  Yes.

10         MR. JUNKER:  I served the Court both with

11  an original of the voluntary disclosure

12  statement and a courtesy copy.  I would like to

13  hand a courtesy copy to the defendant.

14         THE COURT:  At this particular time I'm

15  going to give you a copy of the application

16  that the district attorney has supplied,

17  outlining your felony convictions.  Briefly,

18  you pled guilty in front of Judge Thorp, you

19  pled guilty in front of Judge Paul Kowtna.

20         These are the two you rely on; is that

21  correct?

22         MR. JUNKER:  Yes.

23         THE COURT:  And there was also -- you pled

24  guilty in front of a Judge in the city.

25         MR. JUNKER:  Correct, Judge.  That's

1   correct.   That's one of the alternatives

2   listed.

3        THE COURT:   They're the alternative.

4        But the one that you're zeroing in on is

5   the 1989 and 1995; is that correct?

6        MR. JUNKER:   Those dates sound correct,

7   yes.

8        THE COURT:   Let the record reflect that the

9   defendant has been served with a copy of the

10  statement by the district attorney showing his

11  prior convictions.

12       Now, as I mentioned before, if I ascertain

13  that you are a persistent violent felony

14  offender the maximum is 25 to life.   So you're

15  looking at extensive jail time.

16       All right.   What's the 10th?

17       THE CLERK:   Week from today.   Next Tuesday.

18       THE COURT:   Let's put it on for the 10th

19  and see if we can get you an attorney on this.

20       September 10th.   I'll tell you what we do.

21  Put it on for -- Hold on for a second.   We'll

22  do it the 10th September 10th, for the

23  assignment of a new attorney.

24            *          *          *

25

Hanni J. Planos, C.S.R.

Humphrey v Nealy

## CERTIFICATION

I, Hanni J. Planos, certify that the foregoing

is a true and accurate transcript, only if an

original, and only if certified by me.

_____
Hanni J. Planos, CSR
Official Court Reporter

Hanni J. Planos, C.S.R.

# EXHIBIT 7

## DENIS DILLON
### DISTRICT ATTORNEY, NASSAU COUNTY

### VOLUNTARY DISCLOSURE, NOTICES, AND DEMANDS

Defendant # 1 __William Nealy__   Court Index # 8309/01 & 8310/01

Defendant # 2 _____   Court Index # _____

Defendant # 3 _____   Court Index # _____

### DISCLOSURE (CPL ART. 240)

(1)   Counts and/or Charges:

| | Crime | Date | Approximate Time | Place |
|---|---|---|---|---|
| # 1 | 120.05(2) PL | 4/10/01 | 02:45 | 144 Front St. Hempstead, N.Y. |
| # 2 | 265.02(1) PL | | | |
| # 3 | 120.15 PL | | | |
| # 4 | 205.30 PL | 4/15/01 | 04:21 | Franklin St @ Jackson St. Hempsted N.Y. |
| # 5 | | | | |
| Arrest Information: | | 4/15/01 | | |

(2)   The following statements were made by the defendant, or by any co-defendants to be tried jointly, other than in the course of the criminal transaction, to a public servant engaged in law enforcement activity or to a person then acting under his direction or in cooperation with him: and the People intend to offer such statements as evidence in chief at trial:

| | Defendant # 1 | Defendant # 2 | Defendant # 3 |
|---|---|---|---|
| (A) Oral | (X) | ( ) | ( ) |
| (B) Written | ( ) | ( ) | ( ) |
| (C) Recorded and transcribed | ( ) | ( ) | ( ) |
| (D) Recorded but not transcribed | ( ) | ( ) | ( ) |
| (E) None | ( ) | ( ) | ( ) |

All written, oral and transcribed statements are appended unless otherwise noted in Section (13) of this form. Recorded but not transcribed statements will be made available to counsel on a mutually agreed-upon date.

(3)   Any transcripts of testimony relating to this case, given before the Grand Jury by the defendant, or by any co-defendants to be tried jointly, will be provided when available.

DA-2380.2/81 Rev.7/93

ACF-10

(4)  The following written reports or documents, or portions thereof, concerning physical or mental examin-ations, or scientific tests or experiments, relating to this case, which were made by or at the request or direction of a public servant engaged in law enforcement activity, or by a person whom the People intend to call as a witness at trial, or which the People intend to introduce at trial, are appended, unless other-wise noted in Section (13) of this form:

( )  Narcotics Report                    ( )  Breathalyzer Certification Certificate
( )  Performance Test Report             ( )  Ballistics Report
( )  Breathalyzer Report                 ( )  Handwriting Analysis
( )  Medical Examiner's Report           ( )  Physical Examination
( )  Fingerprint Report                  ( )  Mental Examination
( )  Serology Report                     (X)  Other: _See #13_____
( )  Central Testing Section Logs        ( )  None

(5)  The following property is in the possession of the People and will be made available to the defendant for inspection, photographing, copying or testing on a mutually agreed-upon date:

(X)  Photographs or drawings relating to the case which were made or completed by a public servant en-gaged in law enforcement activity, or by a person whom the People intend to call as a witness at trial, or which the People intend to introduce at trial.

(X)  Tapes or other electronic recordings which the People intend to introduce at trial.

( )  The following property obtained from the defendant, or from any co-defendants to be tried jointly:

_____

_____

_____

_____

_____

(6)  Except as may be noted below, a review of the file in the office of the District Attorney does not in-dicate that the People are presently in possession of anything required to be disclosed prior to trial to the defendant, pursuant to the constitutions of New York State or of the United States.

_____

_____

_____

_____

7)   If, subsequent to the disclosure of the items specified above, additional items, which the District Attorney believes would be subject to disclosure under the provisions of this form, are revealed, such items will be disclosed, unless a protective order to prohibit their discovery would be warranted, in which case a writing to that effect will be provided.

## NOTICES (CPL ART. 710)

8)   PLEASE TAKE NOTICE that pursuant to Section 710.30 of the Criminal Procedure Law, the People intend to offer evidence of the statements of the defendant referred to in Sections (2) and (3) of this form at the trial of this action.

9)   PLEASE TAKE FURTHER NOTICE that pursuant to Section 710.30 of the Criminal Procedure Law, the People intend to offer at the trial of this action testimony regarding an observation of the defendant, either at the time or place of the commission of the offense or upon some other occasion relevant to the case, by a witness who has previously identified the defendant as such, as follows:

*No Hearing Issues*

**Witness # 1**
Date: 4/15/01
Approximate Time: 04:21
Place: Franklin St @ Jackson St, Hempstead, N.Y.
Manner: (  ) Line-up
(  ) Show-up
(  ) Photographs
(X) Other: Confirmatory

*No Hearing Issues*

**Witness # 2**
Date: 4/15/01
Approximate Time: 04:25
Place: Hempstead H.Q.
Manner: (  ) Line-up
(  ) Show up
(  ) Photographs
(X) Other: Confirmatory

## DEMANDS (CPL ARTS. 240 AND 250)

10)   PLEASE TAKE NOTICE that in accordance with the provisions of Section 240.30 of the Criminal Procedure Law, the People hereby demand that within fifteen days of the date of service of this demand, you disclose and make available to the District Attorney of Nassau County for inspection, photographing, copying or testing: (a) any written report or document, or portion thereof, concerning a physical or mental examination, or scientific test, experiment, or comparisons, made by or at the request or direction of the defendant, if the defendant intends to introduce same at the trial of this action, or if the defendant has filed a notice of intent to proffer psychiatric evidence and such report or document relates thereto, or if same was made by a person, other than the defendant, whom the defendant intends to call as a witness at trial; and (b) any photograph, drawing, tape, or other electronic recording which the defendant intends to introduce at trial.

11)   PLEASE TAKE FURTHER NOTICE that in accordance with the provisions of Section 250.20 of the Criminal Procedure Law, the People hereby demand from you that if you intend upon the trial of this action to offer, for any purpose whatever, testimony which may tend to establish the defendant's presence elsewhere than at the scene of the crime or crimes with which he is charged, at the time of their commission, you must, within eight days from the date of service of this demand, serve upon the District Attorney of Nassau County, and file with this Court, a copy thereof, a "notice of alibi" which shall set forth in detail the place or places where the defendant claims to have been, together with the names, post office addresses, residences and places of employment and the addresses thereof of the witnesses upon whom he intends to rely to establish his presence elsewhere than at the scene of the crime or crimes at the time of their commission.

*DCF-10*

If at the trial of this action you call such an alibi witness without have served a notice of alibi pursuant to the demand, or, if having served such a notice you call a witness not specified therein, a motion will be made pursuant to the provisions of Section 250.20 of the Criminal Procedure Law to exclude any testimony of such witness relating to the alibi defense.

(12)    PLEASE TAKE FURTHER NOTICE that in accordance with the provisions of Section 250.10 of the Criminal Procedure Law, the People hereby demand that if you intend upon the trial of this action to present psychiatric evidence, you must, not more than thirty days after entry of the defendant's plea of not guilty, serve upon the District Attorney of Nassau County and file with this Court a written notice of your intention to do so.

(13)    Comments: ① Page 5 of VDF's

② Felony Complaints (2)

③ Redacted PDCN 81

④ PDCN 79s (2)

⑤ Form 330

⑥ LOCAL

⑦ NYSIS (10 pages)

Nothing in these VDFs shall act as a
stipulation or a waiver.

(14)    Date
5/10/01    Form prepared by _____

Assistant District Attorney
Walt M. Junker

_____ Form served on the Court by _____

_____ Form served on _____ by _____

_____ Form served on _____ by _____

_____ Form served on _____ by _____

ACF-10

Oral Statement of Defendant   #   1

The defendant stated, in sum and substance, that:

I didn't cut anybody. Stay the fuck
away from me

Date: 4/15/01   Approx Time: 04:17   Place:

Person to whom statement was made: Not Entitled To

---

Oral Statement of Defendant   #   1

The defendant stated in sum and substance, that:

He wants to move and he needs a travel permit
to South Carolina. He had contact with the
police on 4/9/01 at 12:00 midnight in Hempstead.
There was a fight with two guys at the
Bambu Lounge in Hempstead.

Date: 4/11/01   Approx Time: 2 pm.   Place: 250 Fulton Avenue, Hempstead, N.Y.

Person to whom statement was made: Not Entitled To

# EXHIBIT 8

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NASSAU :   PART 37
 2   --------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK
 3

 4          -against-                    Indictment No.
                                         973N/2001
 5
     WILLIAM NEALY,
 6
                     DEFENDANT.
 7   --------------------------------------X

 8                             Mineola, New York
                               January 28, 2002
 9

10
     B E F O R E:   HON. VICTOR ORT
11                  Supreme Court Justice

12

13   A P P E A R A N C E S:

14                  HON. DENIS DILLON
                    District Attorney, Nassau County
15                  BY:  WALT JUNKER, ESQ.
                    Assistant District Attorney
16                  For the People

17

18                  DeVANE & GRODER
                    114 Old Country Road
                    Suite 345
19                  Mineola, New York  11501
                    Attorney for Defendant
20                  BY:  JEFF GRODER, ESQ.

21

22
     M I N U T E S   O F   P R O C E E D I N G
23

24
                         Kathi A. Fedden
25                       Official Court Reporter
```

People v. Nealy                                    2

 1                  THE CLERK:  This is on for trial,

 2     Indictment 973N of 2001, William Nealy.

 3                  Appearances, please.

 4                  MR. JUNKER:  Walt Junker appearing for the

 5     People, Your Honor.

 6                  MR. GRODER:  Jeff Groder, DeVane & Groder,

 7     114 Old Country Road, Suite 345, Mineola for

 8     Mr. Nealy.

 9                  THE COURT:  Good afternoon.  Welcome to

10     the part.  This is a Judge LaPera case that was

11     assigned to me through Judge Wexner.

12                  MR. JUNKER:  That's correct, Judge.

13                  THE COURT:  Are you ready to proceed?

14                  MR. JUNKER:  Judge, People at this time,

15     while we have previously been ready, are not ready

16     to proceed with trial today.  I discussed last night

17     one of my witnesses decided to go to Puerto Rico

18     yesterday morning.  I can't answer ready for trial

19     at this point without that witness.  I'm asking for

20     a week adjournment to Monday, February 4th.

21                  THE COURT:  What's the defense position?

22                  MR. GRODER:  Defendant's position is that

23     the defendant is ready for trial.  Defendant has

24     been ready for trial.  Judge, I have been since

25     November.

1    Judge, I have been in contact with

2  Mr. Junker all week leading up to today. We've been

3  discussing getting ready for the case. I came in

4  all weekend to finalize my preparations for the

5  case. This morning I come into my office and I have

6  a message from Mr. Junker from Sunday that his

7  witness has gone to Puerto Rico. I mean, that's all

8  well and good, but my client has been in jail since

9  April of last year and he should go to trial. And

10  that's really what we're here to do.

11    I understand there is very little that the

12  Court can do at this point except order Mr. Junker

13  to go to trial, which is what I would ask the Court

14  to do. I don't know whether Mr. Junker knows when

15  this witness is returning. I don't want to have the

16  same thing next week.

17    THE COURT: All right. I do say,

18  Mr. Junker, I'm going to grant the application only

19  because you can't go to trial without your

20  witnesses. Obviously, the time is going to be

21  charged to the People. I don't know what the 30.30

22  ramifications are of this, so. It's the first time

23  I have ever seen the case officially. I'm going to

24  put it back in front of Judge LaPera for February

25  4th. I just ask you if you find out before that

1   date that your witness is not available, please

2   contact Mr. Groder.  It's the civil thing to do.

3   Give him as much notice as possible so he can get

4   ahold of his client and let his client know what's

5   going on and he doesn't have to be yanked back and

6   forth.  I understand he's in Suffolk County.

7            MR. JUNKER:  Right, Judge.  I contacted

8   Mr. Groder as soon as I could, Judge.

9            MR. GRODER:  Judge, there is one or two

10   other things.  Since this matter was on for trial

11   today and in order to avoid any possible delay, I

12   would ask that this Court direct Mr. Junker to turn

13   over the Rosario material for the trial so that I

14   can have adequate time to prepare and possibly avoid

15   a needless delay next week when we start.

16            MR. JUNKER:  Judge, I have already turned

17   over additional discovery material to Mr. Groder

18   today.  If I can just list it quickly for the

19   record.  That being a copy of police car photos, a

20   parole photo of the defendant, a radio tape of a

21   phone transmission and a radio transmission of

22   Hempstead Police Department.  A Department of Motor

23   Vehicles photo that I subpoenaed and I also told

24   Mr. Groder of a possible name of a possible

25   accomplice that we had since discovered that I had

1    previously listed as unknown in discovery responses.

2    I have turned that over to Mr. Groder today and I

3    will turn over the Rosario material on the day the

4    trial starts, as is the usual custom, although

5    technically he's not entitled to it until the first

6    witness takes the stand.

7              THE COURT:  He's not legally entitled to

8    it.  Morally perhaps, because the People are

9    requesting the adjournment.  The Court does not deal

10   in moralities though.  I have to deny the

11   defendant's request.

12             Again, if there is anything that you can

13   give him that will not prejudice your case, let him

14   have it a little earlier, it only helps everybody.

15   We don't have to have the delays in the middle of

16   the trial.  I may end up with the trial, I don't

17   know.

18             MR. JUNKER:  I understand.

19             THE COURT:  I appreciate it when Rosario

20   is turned over earlier.

21             MR. JUNKER:  I recommended previously to

22   Judge LaPera that the case be set down for Friday so

23   we can do the pre-trial and he can have the Rosario

24   to read over the entire weekend.

25             THE COURT:  Very good.

People v. Nealy                                                6

1            Just to reiterate, the case is on February

2    4, 2002 before Judge LaPera.  Good luck, whatever

3    happens.

4            MR. GRODER:  Judge, there is one other

5    item.  We subpoenaed certain photographs from the

6    Hempstead Police Department.  I was given them by

7    Judge LaPera's office this morning.  It's not my

8    practice to hold on to original evidence or original

9    property of the police department, which is what

10   this is.  I would ask that it be placed in the Court

11   file or be kept with the Court, since it is

12   subpoenaed documents.

13           THE COURT:  Subpoenaed to the Court?

14           MR. GRODER:  Correct, that's the only one

15   I can issue.

16           THE COURT:  Fine, we'll take it.

17           MR. GRODER:  The other thing is that the

18   subpoena -- I have indicated to Mr. Junker that, and

19   he knows this, that the subpoena called for the

20   actual book, the physical book, itself that those

21   photos were contained in, the mug shots and

22   Mr. Junker has been kind enough to be my kind of

23   liaison between my subpoenas and the Hempstead

24   Police Department and he's indicated that he'll

25   advise them what the subpoena calls for.

1          MR. JUNKER:  Right.  Judge, I think one of

2    those photos has the book that it came on.  It has a

3    little sticky note.  Can I get the book number?

4          MR. GRODER:  There is a sticky note on the

5    picture.

6          MR. JUNKER:  Just to make certain the

7    right book is brought the next time.

8          THE COURT:  So, as far as you know,

9    Mr. Junker, there is no applications to quash or

10   anything on behalf of the Hempstead Police

11   Department?

12         MR. JUNKER:  No, Judge, I think they

13   misunderstood the subpoena.

14         THE COURT:  Do you have the information?

15         MR. JUNKER:  Yes, I do, Judge, and I'll

16   make sure they understand the subpoena when it's

17   reissued by Mr. Groder.

18         THE COURT:  Thank you.

19         Counsel, would you approach for one

20   second?  It's a totally unrelated matter.

21         (Whereupon, a discussion was held off the

22   record.)

23         MR. GRODER:  Judge, may I put one other

24   thing on the record, please?  Judge, there is an

25   issue that's arisen in the case with regard to a

People v. Nealy                                          8

1    particular detective, his name is Salerno, with the

2    Hempstead Police Department and I'm requesting the

3    notes of Detective Salerno if, in fact, they contain

4    exculpatory evidence in favor of my client relying

5    on cases that actually my client has supplied to me.

6    People versus Finkel, 103 Misc.2d 985.  People

7    versus White, First Department case, 200 A.D.2d 351

8    and Second Department case, People versus Turner, 48

9    A.D.2d 674.

10            THE COURT:  You're claiming this is Brady

11   not Rosario material.

12            MR. GRODER:  Correct.

13            THE COURT:  Mr. Junker, you know anything

14   about this?

15            MR. JUNKER:  Judge, first of all, I'm not

16   aware of any Brady material or it would have been

17   turned over today or as soon as I knew about it.

18   Secondly, I'm not even aware such notes exist.  And

19   third, if anything like that existed and I didn't

20   think it was Brady, it would be turned over as

21   Rosario material prior to the trial if I were to

22   call that person as a witness, which I'm not certain

23   I'm going to do.

24            THE COURT:  Is he on the witness list?

25            MR. JUNKER:  My witness list currently,

People v. Nealy                                    9

1    no, Judge.

2              MR. GRODER:  He's on mine.

3              THE COURT:  You have nothing in your

4    possession you can turn over?

5              MR. JUNKER:  Correct, Judge.  I don't

6    believe such notes exist.

7              THE COURT:  Has a subpoena been issued for

8    the notes?

9              MR. GRODER:  For the witness, but for next

10   Monday the notes will be subpoenaed as well.

11             THE COURT:  You will make it a duces tecum

12   as well.

13             MR. GRODER:  Yes, Judge.

14             THE COURT:  I don't know if it has to be

15   so ordered.

16             MR. GRODER:  Judge LaPera will sign it.

17             THE COURT:  Either he or I will sign it.

18             MR. GRODER:  If I can request the minutes

19   of this proceeding pursuant to 18b?

20             THE COURT:  Certainly.

21             Anything further?

22             MR. GRODER:  No.

23

24             *              *              *

25

1

2                    C E R T I F I C A T I O N

3

4         I hereby certify the within to be a

5     true and accurate transcription of my

6     stenographic notes in the above proceeding.

7

8

9

10

Kathi A. Fedden

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Not Fierro

HE 1371-01

201CR0027137

SUBJECT: "PRINCE" BLOOD, SCAR ON LEFT SIDE OF FACE, LT. GOATEE VERY SHORT HAIR, STOCKY BUILD ABOUT 28 YRS OLD, LIVES WITH SISTER ON BEDELL. ON PAROLE JUST DID TIME IN NYC

ANTONE ALFRED: LIVES ON TERRACE WITH HIS UNCLE GEORGE ALFRED + MOTHER SISTER SHINA ALFRED. "BLOOD" GAVE PRINCE THE KNIFE OR RAZOR ABOUT 22 YRS OLD.

VICTIMS BROTHER: RONALD LANIER IS A NASSAU COUNTY C.O. AND HE IS A TWIN OF VICTIM. SUBJECTS STATED "DAMO CO" WHICH IS A BLOOD SLANG.

M: GOT 45 STITCHES ON FACE

# EXHIBIT 9

(A)

4-10-0B

ON April 10 around 1:00 AM.
in the morning, I Left my moth-
er House which is on 20 Bedell
St. Hempstead NY 11550. Me & MR.
William was together. He was
Going on the Hikes, and I was
Going on Parkside with my
friends and to meet my Brother.
Which Ended up Leading me to
the BAMBOO Lounge. That's when
I arrived to enter a gambling
game, At that time me And
Ratty got into an argument over
money. Later His Brother Joined
and that's when they attempted
to jump me, I recieved a knife
from someone in the crowd who
I knew from Terrace who I
Later on who He was from on
Bedell. I attempted to argue
a while when I felt threatened
By them and I cut MR. Ronald

Lanier Across the face. I went Home Around 3:00 am looking for my uncle Mr. Nealy, my mother told me he wasn't there And what's the matter. I refused to tell her Just saying that I have to tell him something the next morning my uncle came to my mother House Around 10:00 a.m with all of his clothes and belongings. I told him what happened and who the Kids were. He told me what and everything happened. and who the Kids were. He told me he didn't know them, He said he might of knew Patsy from the Barber Shop. He told me he would try to resolve the problem. The next thing they said william cut the man and I was scared I Just cant let him go to Jail to protect me, Because my uncle Had no Knowledge of who-a I had been released from

South OAKS mental Hospital, And my
uncle Promised that it would go this
far, but he is not guilty of this
Crime. I Cimmarron Patterson
state that I cut mR. Ronald Lanier
on April 10 2001 reason a Tuesday
morning Around 1:30-2:00

Cimmarron Patterson
Cimmarron Patterson

I swair in this statement everything
is true

Sworn to before me this 16th day          Cimmarron Patterson
of April, 2002

JEFFREY GRODER
NOTARY PUBLIC, STATE OF NEW YORK
NO. 4976075
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES JANUARY 14, ~~1~~ 2003

(8)

## A F F I D A V I T

STATE OF NEW YORK )
                  )ss:
COUNTY OF CAYUGA )

I, Shamel Howard , being duly, sworn, deposes and says:

1. That I was an eye witness to an incident that occured on April 10, 2001 at 144 Front Street, Hempstead, New York, "Bamboo Lounge".

2. I, along with Antoine Alfred, was playing dice with "CIM", "Patsy","Donald"and a few other people.  An argument broke out between CIM and Patsy.  CIM and Patsy then started fighting and Patsy brother Donlad jumped in.  A few other people broke up the fight.  I then left with Antoine Alfred.

3. The person convicted of this incident William Nealy, was not there when this incident occured.  I along with Antoine Alfred was incarcerated at Nassau County Jail during the months of February and March of 2002.  If a lawyer representing William would have asked me to testify on his behalf, I would have done so, and given the exact same statement contained in this sworn affidavit.  I swear that the contents of this statement are true and that I make it freely and voluntarily.

SHAMEL HOWARD

SWORN TO BEFORE THIS
13th DAY OF November , 2007

NOTARY PUBLIC SIGNATURE

ANDREA ABBOTT
Notary Public, State of New York
Qualified in Onondaga County
No. 01AB5074416
Commission Expires March 17, 2011

**INSTRUCTIONS:** Deponent must place signature immediately after his/her narrative statement which shall include a statement of non-permission when applicable. Police Officer will complete boxed area of form and will witness the deponent's statement by placing signature immediately below the deponent's signature.

| Case Report No. | D.D. No. | | Defendants Name if Known | | Relationship of Deponent to Property |
|---|---|---|---|---|---|
| HE-1370-01 | | | | | |
| Date & Time of Deposition | WITNESS | Rank | Name Printed | Serial No. | Command |
| 04-10-01  0245 | | P.O. | RODRIGUEZ | 1170 | HEMP |

## NOTICE

ANY FALSE STATEMENT MADE IN THIS DEPOSITION IS PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW.

I am DONALD LANIER (10-11-63) _____ I have read and understand the above notice.

On the 10 day of APRIL 19 2001 at about 245 ☐AM ☐PM  I WENT TO PICK UP MY BROTHER AT THE BAMBU LOUNGE LOCATED AT 144 FRONT ST HEMPSTEAD N.Y. WHEN I ARRIVED THERE, MY BROTHER WAS IN AN ARGUMENT WITH ANOTHER PERSON. I TOLD MY BROTHER TO FORGET ABOUT IT, LET'S GO HOME I THEN HEARD THE PERSON WHO MY BROTHER WAS ARGUING WITH ASK ONE OF HIS FRIENDS THAT WAS WITH HIM TO "HAND ME MY SHIT" I THEN SAW HIM REACH OVER AND GRAB SOMETHING FROM OUT OF THAT PERSONS HAND. HE THEN BEGAN TO SWING AT ME WITH THIS OBJECT. HE HIT ME ON MY FACE WITH WHATEVER IT WAS THAT HE HAD IN HIS HAND, AND CAUSED A LACERATION TO MY FACE, WHICH IS CAUSING ME SEVERE PAIN AND IS GOING TO REQUIRE STITCHES. THE PERSON THAT DID THIS TO ME IS A MALE BLACK 30 yrs OLD 5'9" TALL 210 lbs AND WAS WEARING BLACK PANTS, BLACK JACKET, BLACK HAT, AND BLACK BOOTS. I DID NOT WANT THIS PERSON TO ASSAULT ME AND I WANT HIM ARRESTED. I AM GIVING THIS STATEMENT TO P.O. RODRIGUEZ SHN0 169 WHO IS WRITING IT FOR ME AND IT IS THE TRUTH.

X _____

X P.O. Louis Rod _____ SHN0 169

(Continued on reverse side)

M.O. INFORMATION

| TYPE OF EVIDENCE AT SCENE | | | | | | |
|---|---|---|---|---|---|---|
| 151 Blood stains/s | 144 Door-screen | 216 Torch | SUBJECTS ACTIONS OR PECULIARITIES |
| 152 Footprints | 145 Door-sliding glass | 217 Rip or peeled | 281 Alarm silenced/disarmed |
| 153 Human excrement | 146 Roof-skylight | MISCELLANEOUS | 282 Ate/drank on premise |
| 154 Latent prints | 147 Through roof | 221 Ransacked | 283 Blindfolded/bound victim |
| 155 Tire tracks | 148 Through wall | 222 Malicious damage caused | 285 Called victim by some name |
| 156 Tools, equipment, etc. | 149 Unknown | 223 Premise occupied | 286 Defecated/urinated |
| 157 Weapons | 170 Other | 224 Premise adjacent to school, sump, | 289 Disabled phone |
| 158 Other | (Check 1) | parkway, etc. | 291 Indications that a technical skill was used |
| PROPERTY TAKEN/STOLEN | 161 Broke glass | 225 Previously burglarized | 294 Left his/her tools |
| 159 Concealable | 162 Broke down | 226 Suspicious phone calls prior to burglary | 295 Repeats key words or phrases |
| 160 Non-concealable | 163 Cut open | 227 Other | 296 Told not to call police |
| TIME OF DAY | 164 Left open | 228 Mad service used | 297 Tripped alarm, returned later |
| 111 Daylight | 165 Unlocked key | SUBJECT'S WEAPON FEATURES | 299 Used demand note |
| 112 Darkness | 166 Pried | 231 Automatic | 311 Used female accomplice |
| 113 Unknown | 167 Picked | 232 Revolver | 312 Used male accomplice |
| WEATHER | 168 Unknown | 235 Blue steel | 314 Victim opening or closing store |
| 121 Clear | 169 Other | 236 Chrome-nickle | or business |
| 122 Cloudy | SECURITY | 238 Double barrel | 315 Other |
| 123 Fog | 181 Interior lights on | 241 Sawed off | 172 Used 1 accomplice |
| 124 Fog | 182 Exterior lights on | 171 Knife | 173 Used 2 accomplice |
| 125 Snow | 183 Bars or grates | 243 Other | 174 Used 3 accomplice |
| 126 Unknown | 184 Dog | SUBJECT PRETENDED TO BE | 175 Abducted victim |
| POINT OF ENTRY | 185 Employee present | 252 Customer/client | 176 Assaulted victim(s) |
| 131 Front | 186 Guard or watchman | 253 Delivery person | 177 Raped/sodomized victim |
| 132 Rear | 187 Security fence | 254 Disabled motorist | 178 Used victims car |
| 133 Left side | 189 Photo or camera | 256 Hitchhiking | 344 Drugged/intoxicated |
| 134 Right side | 191 None | 257 Injured/ill | SUBJECT'S METHOD OF ESCAPE |
| 135 Roof | 192 Other | 258 Messenger | 361 Car |
| 136 Other (Specify) | SAFES | 259 Needed a phone | 362 Foot |
| MODE OF ENTRY (Check 1) | 211 None | 261 Police/law enforcement officer | 363 Motorcycle |
| 141 Window | 212 Carried away | 262 Repairman | 364 Truck |
| 142 Door-wood | 213 Drilled or punched | 263 Salesperson | 365 Unknown |
| | 214 Explosive | 264 Seeking directions | 179 Bicycle |

---

## PHYSICAL DESCRIPTION

| SUBJECT 1 | | SUBJECT 2 |
|---|---|---|
| ✓ Male | . SEX . | Male |
| Female | | Female |
| White | . RACE . | White |
| ✓ Black | | Black |
| Oriental | | Oriental |
| American Indian/Eskimo | | American Indian/Eskimo |
| 30 | . AGE . | |
| 5'9" | HEIGHT | |
| 210 | WEIGHT | |
| HEAVY | BUILD | |
| BLACK | HAIR (Color,Type,Length) | |
| | COMPLEXION | |
| | FACIAL HAIR | |
| | FACIAL ODDITIES/SCARS . | |
| | EYE COLOR. | |
| | TEETH | |
| | FACIAL JEWELRY/ADORNMENTS. | |
| | DEFORMITIES/SCARS | |
| | TATTOO (Location/Description) | |
| | SPEECH | |
| | GANG/GROUP AFFILIATION | |
| | MISCELLANEOUS | |
| BLACK | PANTS LONG (Type/Pattern/Color) | |
| | SHORTS (Type/Pattern/Color) | |
| | SHIRT/SWEATER (Type/Pattern/Color) | |
| BLACK | COAT/JACKET (Length/Type/Pattern/Color) | |
| BLACK | HAT (Type/Pattern/Color) | |
| BLACK (BOOTS) | FOOTWEAR (Type/Pattern/Color) | |
| | WOMAN'S CLOTHES (Type/Pattern/Color) | |

# EXHIBIT 10

COUNTY COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU : CRIMINAL PART XII
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
THE PEOPLE OF THE STATE OF NEW YORK

      -against-                Indictment No.
                              973N-2001


WILLIAM NEALY,

                    DEFENDANT.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

                          Mineola, New York
                          October 1, 2001


B E F O R E:   HON. RICHARD A. LAPERA
             County Court Judge


A P P E A R A N C E S:

             HON. DENIS DILLON
             District Attorney, Nassau County
             BY:   WALT JUNKER, ESQ.
             Assistant District Attorney
             For the People


             DEVANE & GRODER
             114 Old Country Road
             Mineola, New York 11501
             BY:   JEFFREY GRODER, ESQ.
             Attorney for the Defendant


Christa Flash, R.P.R.
Official Court Reporter


ACF-10

1

2          THE CLERK:   Indictment number 973N of the year

3   2001, People v. William Nealy.

4          Appearances for the record, please, for the

5   People.

6          MR. JUNKER:   Walt Junker appearing for the

7   People, your Honor.

8          THE CLERK:   For Mr. Nealy?

9          MR. GRODER:   Jeff Groder, Devane and Groder,

10   114 Old Country Road, Mineola.

11          Your Honor, if it's all right, we'll do it

12   from here.

13          THE COURT:   Sure.

14          MR. GRODER:   The reason why I had been in

15   touch with your chambers after the hearing is after

16   having visited my client, he raised several issues he

17   wanted to address to the Court, which he's allowing me

18   to do that for him on his behalf.   I would like to

19   address those issues now.

20          First, Judge, is that my client indicates that

21   he is preparing motions at the jail, and in order to

22   prepare them and to get them properly notarized and

23   served, he's requesting his commitment be marked for

24   daily access to the law library.

25          THE COURT:   I'll give him access to the

1    library.  I'll put down daily.  I thought I originally

2    had given that to him.  Okay.  If the sheriff doesn't

3    give it to him, let me know.  I have no problem with

4    that at all.

5              THE DEFENDANT:  I haven't been able to--

6              THE COURT:  I'll see to it.  I have no problem

7    with that at all.

8              MR. GRODER:  Secondly, Judge, is more of a

9    Brady issue.  It's my client's position that the

10   District Attorney should be required to turn over any

11   reports that contain a description, or lack of

12   description, by the complaining witness in this case,

13   because it's our contention that on the date of the

14   assault, the complainant failed to give any physical

15   description of his assailant.  When there is no reason

16   to believe that the witness' observations were not

17   recorded or have since been forgotten, his opportunity

18   to observe may be entitled to little or no significance.

19   The People bear a heavier burden to show by other

20   circumstances that the witness formed a firm image of

21   the defendant and that this recollection persists.  The

22   defendant is entitled to these pieces of exculpatory

23   evidence, especially since the complainant never

24   identified the defendant on April 10th, which was the

25   date of the assault, or made mention of the defendant's

1   unique characteristics such as scars to the right side

2   and left side of his face and his missing front tooth.

3   So that's his second request with regard to the issues

4   he's raising.

5            His third request is, I've already discussed

6   this with the Assistant District Attorney, that he be

7   given or be provided with a color mug shot of the

8   defendant.  The defendant contends it is not actually

9   him in the photograph.  The District Attorney indicates

10  that he will provide me with actually two photos, one

11  for myself and one for my client.  My client is

12  requesting this-- I think we'd be entitled to it

13  anyway-- but he is requesting it because he believes

14  that the police displayed this photograph to the

15  complainant prior to his arrest on April the 15th,

16  causing the defendant to be misidentified by the

17  complainant to support this allegation.

18            The complainant went from making no

19  identification on April the 10th to making an alleged

20  positive identification on April 15th.  It's my client's

21  position something happened in that five-day period

22  causing the complainant to identify the defendant as his

23  assailant, and the defendant believes it was the

24  displaying of this mug shot that resembles the defendant

25  to cause the misidentification of the defendant.

1            The defendant is not-- further, the defendant

2    is not known to any of the prosecution witnesses, and he

3    requests finally, going back to the previous issue, he's

4    requesting an adjournment for an opportunity to submit

5    his motions before any other proceedings take place in

6    this case.

7            THE COURT:  Okay.  You're going to file that

8    or give that to the Court or--

9            MR. GRODER:  It's on the record.

10           THE COURT:  Okay.  I don't have a problem with

11   that.

12           MR. GRODER:  It's on the record, Judge.

13           THE COURT:  DA, you got that?  We're going to

14   need copies of this.

15           MR. GRODER:  I'm requesting the minutes

16   anyway.

17           MR. JUNKER:  The People also.

18           THE COURT:  Mr. Nealy, okay.  I'll entertain

19   your motion at this time.  Okay?  But I'd like to talk

20   to you about something.  Okay?  Whether you take a plea

21   or you don't take a plea, I want to outline certain

22   things for you.  Okay?

23           I read the record.  I read the Grand Jury

24   minutes.  At the time of the alleged incident, you guys

25   were playing dice.  There was a little bit of gambling

1    going on.  All right?  Now, I'm just saying in the event

2    you're found guilty, okay, and in the event you are

3    found to be a persistent felony offender, you can get 25

4    years to life, 25 years to life.

5              Now, the District Attorney, I think, advised

6    you through your attorney and has advised my law clerk

7    if you want to take a plea, I would agree to a

8    commitment of five years.  Now, you know, being a

9    gambler, you like odds in your favor.  These odds are in

10   your favor.  You may win the case, don't get me wrong,

11   but your exposure, your minimum, is 15 to 25.

12             MR. GRODER:  It's 12 years to life as a

13   persistent felony--

14             THE COURT:  The maximum could be 25 to life.

15   So there's-- if you're really a true gambler, your odds

16   are not that good here.  I'm saying to you, you don't

17   have to make a decision now, but it's something for you

18   to think about.  That's all I'm saying to you.  Don't

19   say anything.  It's something for you to think about.

20   You may take the position, Judge, I wasn't there, I

21   didn't do it, I want to go to trial.  Fine.  That's up

22   to you.  I've got no problem with that, but I just want

23   to bring to your attention what your exposure would be.

24   I'm not saying that's what it's going to be, but it

25   could be.  That's all I'm mentioning to you.  It's

1   something to think about.  That's all I'll say.  Okay?

2   So--

3   MR. JUNKER:  Judge, I want to make one thing

4   clear for the record.  We were going to recommend no

5   less than six.  My understanding is that the Court was

6   going to commit to the five years.  I want to make that

7   clear for the record.  The offer is still open today, as

8   I understand it, but I'm not going to guarantee it's

9   going to stay open.  I'll keep it open for another date

10  since you want to give the defendant time to think about

11  it.  That's fine.  At some date it will be withdrawn.

12  THE COURT:  That's something for you to think

13  about.  You don't have to think about it.  Just think

14  about it.  You don't even have to tell me no, yes,

15  maybe.  I'm just outlining on the record what your

16  possible penalties could be here.

17  October 15th.  All right?

18  MR. GRODER:  That's fine, Judge.

19  THE COURT:  October 15th for decision.

20  THE CLERK:  Custody status is continued,

21  Judge?

22  THE COURT:  Yes.

23  THE CLERK:  Officers, take charge, please.

24  THE COURT:  Produce the defendant.  Make sure

25  you write on that commitment daily privileges to the

People v. Nealy                                        8

1          library.

2

3                    * C E R T I F I C A T I O N *

4              The foregoing is certified to be a true and
   accurate transcript of my original stenographic notes for the
5  above-mentioned proceedings.

6

7          _Christa Flash_
           Christa Flash, Official Court Reporter
8          Notary Public, State of New York

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                        ACF-10

# EXHIBIT 11

1        STATE OF NEW YORK

2    COUNTY COURT : NASSAU COUNTY, XIV

3   - - - - - - - - - - - - - - - - - - X

4   THE PEOPLE OF THE STATE OF NEW YORK   :

         - versus -            :   973N/01

5      WILLIAM NEALY,           :   6045323Q

6         Defendant        :

7   - - - - - - - - - - - - - - - - - - X

8                  February 11, 2003

9                  262 Old Country Road

10                 Mineola, New York

11

12   B E F O R E:

13        HONORABLE RICHARD A. LA PERA,
                County Court Judge

14   A P P E A R A N C E S:

15        HON. DENIS DILLON
        Nassau County District Attorney

16        BY:  WALT JUNKER, Esq., of Counsel
            Assistant District Attorney

17                   For the People

18        RICHARD BARBUTO, ESQ.
          33 Willis Avenue

19          Mineola, New York 11501
                 For the Defendant

20

21          HEARING & SENTENCE

22                   RICHARD W. BARRY
                Senior Court Reporter

23

24

25

1    THE CLERK:  People versus William Nealy,

2  indictment 973N of '01.

3    Mr. Nealy, you are the same William Nealy who

4  after a jury trial was convicted on March 12th, 2002 of

5  the following:  Assault in the first degree, criminal

6  possession of a weapon in the third degree, menacing in

7  the third degree, and resisting arrest, is that you,

8  sir?

9    THE DEFENDANT:  No assault in the second

10  degree.

11    THE COURT:  Are you the same person, sir?

12    THE DEFENDANT:  Yes, yes.

13    THE COURT:  All right.  At this particular

14  time, this is a continuation of a hearing in order to

15  ascertain if the defendant is a persistent violent

16  felony offender or alternative, eligible persistent

17  felony offender.

18    MR. JUNKER:  Judge, I just want to put on the

19  record, the People are ready.

20    The statement by the Court is correct.  It is

21  persistent violent felony offender hearing with the

22  other matters being held in the alternative pending the

23  Court's decision.

24    THE COURT:  And, at this particular time, the

25  People have presented their case, and have rested,

1    correct?

2              MR. JUNKER:  Correct, Judge.

3              THE COURT:  The last time we had the

4    defendant indicate that he may want to testify.  Did

5    you want to put something on the record first, Mr.

6    Barbuto?

7              MR. BARBUTO:  Yes, Judge, I did.

8              The last time the case was on, I made a

9    statement that Mr. Nealy and I differed on the state of

10   the law. So, that nobody thinks that I am acting in an

11   adversarial way to my client, that was the disagreement

12   more or less with respect to tactics more than

13   anything.

14             After seeing Mr. Nealy, we are prepared to

15   proceed this morning.  I have every intention of

16   representing him to the best of my ability.  I want to

17   make that clear for the record.

18             THE COURT:  Okay.

19             In other words, I think the difference was,

20   that Mr. Nealy indicates he thinks he should be

21   sentenced under the old law and the District Attorney

22   naturally disagrees with that.

23             MR. BARBUTO:  That's correct.

24             THE COURT:  Was that the-- was that your

25   disagreement on that?

1      MR. BARBUTO:  Pretty much sir.

2      THE COURT:  With regard to you and your

3  client.

4      Mr. Nealy what is your pleasure, do you want

5  to submit some papers or would you like to testify?

6      THE DEFENDANT:  I would like to do both.  The

7  first thing I wanted to do, I wanted to address the

8  guidelines. I brought the legal documentation.

9      THE COURT:  Do you want to submit them into

10 evidence?

11     THE DEFENDANT:  It is just a portion of it

12 that I wanted to submit into evidence.  Dealing with

13 the-- dealing with the statutory-- dealing with the

14 1995 amendment.

15     THE COURT:  Mark that into evidence.

16     Is that the defendant's first piece of

17 evidence, I think it is.

18     MR. BARBUTO:  I am not sure.

19     MR. JUNKER:  Judge, I have the previously

20 admitted evidence right here.  I believe that will be

21 the first defense document.  Let me double check.

22     THE COURT:  We will mark that Defendant's

23 Exhibit A.

24     THE CLERK:  Your Honor, I was looking at the

25 book.

1   THE COURT: Is this the trial?

2   THE CLERK: This is marked continued hearing,

3   that we started back, it should be dated on the top on

4   11/14/02. This stuff has been marked.

5   MR. BARBUTO: I believe it is B, Judge.

6   THE COURT: This is Defendant's Exhibit B.

7   We will mark this into evidence.

8   COURT OFFICER: Defendant's Exhibit B in

9   evidence.

10   (So marked.)

11   THE COURT: All right. He wants to testify?

12   MR. BARBUTO: Do you want to testify?

13   THE DEFENDANT: Yeah.

14   THE COURT: Let's swear him in.

15   W-I-L-L-A-I-M   N-E-A-L-Y, having been first duly sworn, took

16   the stand and testified as follows:

17   THE COURT: All right. What do you want to

18   tell this Court, Mr. Nealy.

19   THE DEFENDANT: I wanted to tell this Court,

20   well, I wanted to clarify something dealing with the

21   sentencing guidelines. That is the first thing I

22   wanted to do.

23   THE COURT: Fine.

24   THE DEFENDANT: If you-- I need to know

25   clearly what is my minimum. I know my maximum is. I

1   need to know what my minimum is according to the law.

2          Now if you are telling me my minimum is

3   twelve and that is the less I can get.  I won't contest

4   the hearing if that is factual.  I need to know what is

5   the factual law on it.

6          The assault second that I got in the 1995,

7   there was no violence.  Actually there was no violence

8   in that case.  The police officer as the testimony from

9   my trial would show, if you got the trial minutes from

10  my last trial.  The police officer was chasing me and

11  he tackled me.  That was the extent of that assault. It

12  was nothing about as far as me hitting him, punching

13  him.

14          THE COURT:  Go ahead.

15          THE DEFENDANT:  Attacking him or anything.

16          THE COURT:  You are talking about the trial I

17  conducted?

18          THE DEFENDANT:  No, I am talking about the

19  assault from 1995, the one that I was convicted of.

20          THE COURT:  In front of Judge Kowtna.

21          THE DEFENDANT:  One of the Charges they are

22  using to make me a violent persistent.  I am saying

23  that there was no actual violence in that case.

24          The police officer was chasing me, I dove

25  over a fence, he dove behind me, tackled me and that

1   was the extent of the assault. My trial minutes will

2   verify that.

3          The officer never said that I hit him,

4   punched him, kicked him or anything.  It was just that

5   being that the statute under the law dealing with that,

6   the intent to prevent an officer from performing his

7   lawful duty.

8          So this was the basis of why I could not get

9   that case thrown out on the appeal was because they

10  said I had the intent to prevent a police officer from

11  performing his duty. It had nothing to do with me

12  actually doing anything to the officer, to say I am a

13  violent persistent, to say I have a tendency for

14  violence.

15         So this is the impression I am getting the

16  D.A. is saying I have a tendency to commit violent

17  acts. That particular felony, I did nothing to that

18  officer at all.  Nothing violent.

19         THE COURT:  Okay.  You are talking about the

20  trial that was conducted on February 2nd, 1995 in front

21  of Judge Kowtna, correct?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Okay.

24         THE DEFENDANT:  The police officer testified

25  at that trial and he testified to the fact that I did

1   nothing, absolutely nothing to him physically.

2          And, any injury that he sustained was that he

3   dove over the fence, he said he hit his head, he went

4   to the hospital, they-- he was off for a week, they

5   gave him Tylenol.  There was nothing, no physical

6   injury.  The whole basis why I could not get that

7   acquitted on that was because there was no-- it was the

8   intent to prevent an officer from performing his lawful

9   duty. Not that I did anything to this police officer.

10          I mean so, when I appealed it, my lawyer, he

11   never appealed it.  He appealed the other assault but

12   he never appealed that one.  He never brought up no

13   legal issue.  He told me I didn't have a legal issue

14   based on the fact that the clause that is in there

15   dealing with the intent from the officer performing a

16   lawful duty.  He says it doesn't matter I didn't do

17   nothing to the officer.  It is just a fact that I

18   prevented him from performing his lawful duty in the

19   process, he sustained the injury.  Therefore, he had no

20   legal argument.

21          THE COURT:  Okay.

22          Now, you had asked me what the minimum and

23   the maximum was if you were found to be a persistent

24   violent felony conviction, you asked me that question;

25   is that correct?

- C O L L O Q U Y -

9

1    THE DEFENDANT:  Yes.

2    And Your Honor had told me it was twelve.

3    THE COURT:  I will tell you what it is.  The

4    minimum is twelve to life and the maximum is 25 to

5    life.

6    THE DEFENDANT:  Now, when I looked it up,

7    according to the-- what I submitted, I mean there got

8    to be -- something got to be wrong.  If I go to the law

9    books and look it up and you are telling me that

10   according to that amendment, 1995, it says that I am

11   not supposed to be sentenced under Pataki sentencing

12   guidelines, based on the years of the felony.

13   THE COURT:  But that is your theory and that

14   is why you submitted--

15   THE DEFENDANT:  That is not my theory.

16   THE COURT:  Listen to me, would you listen to

17   me.

18   THE DEFENDANT:  I am listening.

19   THE COURT:  This is why you submitted

20   Defendant's Exhibit B, because you feel you should be

21   sentenced under the old law and not Pataki's law; is

22   that correct?

23   THE DEFENDANT:  I submitted that based on my

24   understanding of the law.  If I am reading it wrong

25   then somebody should-- my lawyer should read it and

C O L L O Q U Y

1    tell me that I am reading it wrong.  If I am reading it

2    wrong then I would not be here.

3         THE COURT:  Your attorney will address that

4    in his closing arguments.

5         Anything else you want to tell me?

6         THE DEFENDANT:  No, that is basically all I

7    wanted to discuss dealing with the assault from 1995.

8         THE COURT:  Okay.

9         THE DEFENDANT:  There was no violence ever

10   committed in that case.

11        THE COURT:  All right.

12        Defendant rest?

13        MR. BARBUTO:  The defendant rests.

14        THE COURT:  Some closing arguments, please.

15        MR. BARBUTO:  Judge, this has been a

16   relatively short hearing.

17        THE DEFENDANT:  Excuse me, excuse me.  Before

18   we have any type of closing argument, I would like to

19   confer with my attorney.  He never read that.  He never

20   read what I submitted today.  Do you understand?  So I

21   mean, this is ridiculous.

22        THE COURT:  Okay.

23        THE DEFENDANT:  He has to at least read what

24   I gave him in order to argue anything.

25        THE COURT:  He knows the law and he will make

- C O L L O Q U Y -

1    an argument on it right now.  This is not a novel

2    issue, you brought this up before.

3         THE DEFENDANT:  He never read it.  He told me

4    he disagreed.  He never read it.  How is he going to

5    represent me if he is not going to read my position.

6         THE COURT:  All right.

7         MR. JUNKER:  Judge, I do have one or two

8    questions for the defendant after.

9         THE COURT:  You have some questions?

10        MR. JUNKER:  Yes.

11        THE COURT:  The District Attorney wants to

12   ask you some questions.

13        MR. JUNKER:  I will ask this first be marked

14   for identification as Exhibit 20.

15        COURT OFFICER:  So marked.

16        (So marked.)

17        THE DEFENDANT:  I don't have time for this.

18   If I am not represented correctly and have a fair and

19   impartial hearing.

20        MR. JUNKER:  Judge, let the record reflect, I

21   am handing what has been marked for identification as

22   Exhibit 20, to the defendant's attorney and when he is

23   done with that, I would ask that it be handed to the

24   defendant for the defendant's review.

25        (Pause.)

- C O L L O Q U Y -

1          THE COURT:  Do you have a question?

2          MR. JUNKER:  Yes, Judge.

3          Has the defendant had an opportunity to review

4     the document that I have handed him?

5          MR. BARBUTO:  That's correct.

6          THE DEFENDANT:  Yeah.

7     CROSS EXAMINATION BY MR. JUNKER:

8          Q    And that would be the minutes for your resentencing

9     that you were successful on appeal in the 1995 case with Judge

10    Kowtna, that you were just referring to, correct?

11         A    Yes.

12         Q    And, those minutes reflect the new sentence that you

13    were given after --

14         A    On the one count of the indictment.

15         THE COURT:  Sir, listen to the question.  If

16    you keep interrupting, you are going to give up your

17    right to this hearing.  I will cut it short.  Listen to

18    the question.

19         Q    But those are the minutes from your resentencing,

20    correct?

21         A    Yes.

22         MR. JUNKER:  Judge, I would offer this as

23    People's Exhibit 20, for the purposes of this hearing.

24         THE COURT:  Okay.

25         MR. JUNKER:  I ask it be admitted into

1    evidence.

2              THE COURT:  In evidence.

3              COURT OFFICER:  In evidence.

4    BY MR. JUNKER:

5         Q    Sir, I am handing you what has been admitted into

6    evidence previously for this hearing as Exhibit 12, I believe.

7    Let me know when you are done reviewing it.

8         A    Yes.

9         Q    Sir, prior to the trial in your present charge, one

10   of the Charges was criminal possession of a weapon in the

11   third degree, correct?

12        A    Ah-hum, yes.

13        Q    And you understood that the reason that that was

14   elevated to a felony was because of a prior conviction that

15   was filed by this special certificate, correct?

16        A    Yes.

17        Q    And you discussed that with your attorney at that

18   time, Jeff Groder?

19        A    Did I discuss what with Jeff Groder?

20        Q    You discussed that matter with Jeff Groder prior to

21   the trial?

22        A    No.

23        Q    Isn't it true, sir, prior to trial in this matter,

24   you were asked whether or not you wanted to admit that

25   document because you did not-- the crime could be proved

14

- C O L L O Q U Y -

1    against you at trial?

2        A    Yes.

3        Q    And you decided to admit that charge, that that--

4    you were the same person convicted of those Charges rather

5    than contest them, correct?

6        A    Yes.

7            MR. JUNKER:  Thank you.

8            I have no further questions at this time,

9    Judge.

10           MR. BARBUTO:  I have nothing further, Judge.

11           THE COURT:  All right.  Some closing

12   arguments.

13           MR. BARBUTO:  Judge, as you correctly point

14   out, I have read the law that Mr. Nealy has submitted.

15           I respectfully suggest based on the evidence

16   adduced to this Court that there has not been

17   sufficient proof to adjudged him a persistent violent

18   felony offender, thank you.

19           THE COURT:  Okay.

20           D.A.?

21           MR. JUNKER:  Judge, I will be as brief as I

22   can.  But basically, the persistent violent felony

23   offender here in this case has been proven through

24   documents that are linked throughout the entire case.

25           First, this defendant has admitted in open

- C O L L O Q U Y -

1    court numerous times that he is the same man convicted

2    at trial in this case. In this case, he pled-- he

3    admitted his 1995 conviction by way of the special

4    information that is filed and attached to the

5    indictment prior to trial.  That proves he is the same

6    person as in 1995.

7           In the 1995 case, he admitted that he was the

8    same individual who had been convicted of the last

9    charge which is the, I believe the 1989 conviction.

10          So it has been proven that he is in fact the

11   same individual through process of all the cases being

12   linked.  I am sorry, a 1998, a 1988 case, excuse me.

13          Moreover, Judge, the time periods needed to

14   toll in order to prove that the 1998 case can be

15   included in his persistent violent felony offender

16   status have been proven. The time period from the

17   Nassau County Jail alone would be enough to include

18   this not too much the upstate certificate of time that

19   he served upstate.

20          Finally, Judge, going to the  -- two last

21   things, one the prior felonies, were in fact violent.

22   The document has been admitted, all show that they were

23   said, clearly they were violent.  This defendant has

24   admitted those documents previously, he cannot contest

25   them now which brings me to my last point the

- C O L L O Q U Y -

76

1   constitutionality.

2          The only constitutional defect that the

3   defendant argues in this trial, is, well you attempted

4   at one point to argue the 1988 case.

5          However, he has previously in the 1995 case,

6   admitted that he was a prior felony offender, actually

7   prior violent felony offender, pursuant to CPL Section

8   400.15 sub section 8, he is now barred from attacking

9   the constitutionality of that prior conviction.

10          Now, concerning the 1995 conviction, that he

11   contests on a constitutional basis.  I would submit

12   that he is not permitted to attack that at this point

13   and that any attack that he does make is in fact not

14   credible for the following reasons:

15          One, the People have admitted all the prior

16   trial testimony for the Court to read and peruse over

17   to see if there were any constitutional defects in it.

18   It was submitted for this Court.  You had ample time to

19   read this since the case was adjourned a number of

20   times for the hearing.

21          Second, at the resentencing after appeal, the

22   defendant never mentioned any kind of argument he has

23   had with his attorney about appealing the assault in

24   the second charge against the officer. I would submit

25   that the reason that was not done is because he was in

- C O L L O Q U Y -

fact guilty of that charge.

Lastly, Judge, in that this present case here today, the charge that he admitted prior to trial, that elevated the criminal possession of a weapon in the third to a felony, is that same case.

At that time, if he wished to contest the constitutionality of that case, based upon any kind of assistance of counsel arguments, he could have done so. He didn't. Because it was convenient for him at this time -- at that time rather.

Now at this time because it is no longer convenient, to cease contesting that, he now contests it. I submit that there was no ineffective assistance of counsel, that the constitutionality of all cases is clearly to be affirmed and that all Charges are in fact violent Charges and that the defendant must be sentenced under the current sentencing guidelines because it is the current charge that controls whether he is a persistent violent felony offender and therefore he should be given and the People submit he should be given maximum sentence possible under the law.

THE COURT:  Thank you.

I have reviewed all the evidence in the case, also the evidence that the defendant submitted. This is

- C O L L O Q U Y -                                                    18

1    the decision after hearing:

2         After the hearing, after hearing held

3    pursuant to and in accordance with the Criminal

4    Procedure Law, Section 40.16, the Court finds that the

5    People have satisfied their burden of proving beyond a

6    reasonable doubt that the defendant William Nealy is a

7    persistent violent felony offender as defined by the

8    Penal Law under Section 70.08 subdivision 1(A).

9    Specifically, the People have proved that the defendant

10   has been subject to two predicate violent felony

11   convictions.  Criminal possession of a weapon in the

12   second degree, a C violent.  The defendant pled guilty

13   on September 7th, the year-- 1989. Sentenced on 10/6/89

14   to three and a third to ten years by Judge Thorp.

15        Assault in the second degree, a D violent

16   felony, the defendant was found guilty after trial on

17   February 2nd, 1995 and sentenced on March 2nd, 1995 to

18   an indeterminate sentence of no less than three, no

19   more than six, as a prior felony offender by Judge

20   Kowtna.

21        On March 2nd, the year 2002, the defendant

22   was convicted after trial of the crime of assault in

23   the second degree, which is a violent felony; criminal

24   possession of a weapon in the third degree, which is a

25   non violent felony; menacing in the third degree, a

misdemeanor; and resisting arrest, misdemeanor.

Pursuant to the Penal Law, 70.02 subdivision 1(C), assault in the second degree, is classified as a D violent felony. Accordingly, the Court finds that the defendant to be a persistent violent felony offender, and will sentence the defendant in accordance with the Penal Law, 70.08 subdivision 3(C), so ordered. The order is signed today.

Does the defendant wish to say anything before I pronounce sentence?

MR. JUNKER: Judge, I have one question first.

THE COURT: Yes.

MR. JUNKER: Does the Court also find that the tolling period was met for the 1989 conviction?

THE COURT: Yes. Because he served three and a half to ten years.

MR. JUNKER: Thank you, Judge, I wanted that clear for the record.

THE COURT: There is no question about that. That is on the sentence on October 6th, 1989, correct?

MR. JUNKER: Thank you, Judge.

THE COURT: The period was tolled because he was sentenced to three and a third to ten.

MR. JUNKER: He was serving -- incarcerated

- S E N T E N C E -                                              20

1    during that time.

2              THE COURT:  Upstate.

3         MR. JUNKER:  Thank you, Judge.

4              THE COURT:  Sergeant do you want to give this

5    to-- he has got to put-- after I sentence him.  He has

6    to insert that after I sentence him.

7              Mr. Nealy, do you want to say anything?

8         THE DEFENDANT:  Yes.

9         THE COURT:  Before I pronounce sentence?

10        THE DEFENDANT:  Yes.

11             THE COURT:  Counsel do you wish to say

12   anything or does Mr. Nealy want to talk?

13             MR. BARBUTO:  Mr. Nealy would like to speak.

14             THE COURT:  Yes, Mr. Nealy.

15             THE COURT:  There is no question about this,

16   I will direct Mr. Barbuto to file the formal Notice of

17   Appeal concerning the trial.  No question about it.

18             And my poor person notice.

19             THE COURT:  That is part of the whole thing.

20             THE DEFENDANT:  Yeah, I would like to say a

21   few things.

22             THE DEFENDANT:  First thing I would like to

23   say, the victim in this case, identified somebody else

24   as being the person who had the knife the night he was

25   cut or assaulted. This person has never been arrested.

- S E N T E N C E -                                                      21

1        The District Attorney knows who this person is.  He hid

2     this person's identity from me during the trial so I

3     could not subpoena this person to come testify on my

4     behalf.

5              Also, someone else has confessed to

6     committing this crime.  I don't understand how -- I

7     feel that I am the victim of malicious prosecution,

8     selected prosecution and prosecutorial misconduct.  The

9     victim never identified me by name.  He identified

10    Antoine Alfred(phonetic) being the person who had the

11    knife at the night of the assault.  He said Antoine

12    Alfred passed the knife to the perpetrator to cut him.

13    Yet this person who is in a state correctional

14    facility, never arrested, charged or anything.

15              THE COURT:  Okay.

16              THE DEFENDANT:  It is my belief, Antoine

17    Alfred was not involved in this crime.  Yet he was

18    still identified as being involved, yet he was never

19    charged with anything.  District Attorney claims he

20    never spoke to this person, but I know he spoke to this

21    person, but he claims he never spoke to this person, he

22    never charged this person with anything.

23              Also my nephew confessed, he is the one that

24    assaulted Antoine Alfred.  He has never been charged.

25    It seems like I am the convenient person, that I have a

1   prior criminal record.  I am the easier target to get a

2   conviction off of.  It seems to be the basis of my

3   conviction.  I feel there was no evidence to convict

4   me.  I feel that I was not given a fair and impartial

5   trial.

6           My lawyer, Jeffrey Groder withheld evidence

7   from me.  He withheld evidence of the fact that he knew

8   who Antoine Alfred was.  Called the District Attorney's

9   response, motion to set aside the verdict.  He claimed

10  that he told Jeffrey Groder in front of Judge Ort's

11  chamber that Antoine Alfred was in the Nassau County

12  Jail.  Jeff Groder never told me this.  He told me he

13  could not locate this person, that it was a fake name.

14          My family had to go on the internet to locate

15  this person being in the county jail.  I am saying it

16  is like, you know, the District Attorney has never ever

17  given me a fair chance to prove my innocence.  He

18  withheld all types of Rosario material.

19          Then when we submitted this information, this

20  person Jeffery, this person Antoine Alfred was still

21  never questioned about his involvement with this crime.

22          Now, the District Attorney claimed that I am

23  a gang member.  He says that I am Blood.  I am a gang

24  member and this was the motivation of me committing

25  this crime because I am Blood.  The victim also said

123

1   that Antoine Alfred was Blood.  Antoine Alfred gave me

2   the knife to cut him and we both Blood, that makes it a

3   gang assault.

4        I don't understand how this person Antoine

5   Alfred never ever  -- why he wasn't my codefendant.

6   Why he was not sitting next to me in trial in this case

7   when he was identified by name.

8        Not only he identified by name, his mother's

9   name and his uncle's name.  There was no mistake in

10  identity.  The victim gave his whole family name to the

11  police.  It is not like he said-- he said Shell Alfred.

12  His uncle's name is George Alfred.  He gave his whole

13  blood line.

14        THE COURT:   Anything else you want to tell

15  me Mr. Nealy?

16        THE DEFENDANT:  Yeah, I got a few things I

17  want say.

18        So, Jeffery Groder, this is my main issue.

19  Because the-- I feel the District Attorney's job is to

20  corrupt things and hide evidence that is his function.

21  I guess it seems.  I will not hold him-- but Jeffrey

22  Groder my lawyer, he is suppose to represent me.  He

23  withheld all this evidence from me.  He also withheld

24  evidence from me that Donald Linera, I used to imitate

25  his brother.  I got a copy of his criminal case.  He

- S E N T E N C E -                                    24

1    imitated he was his brother.  He got arrested.  Jeff

2    Groder hid this from me.  He never says he likes to

3    imitate he's a Nassau County Correction officer.  His

4    brother.  There is all types of evidence that was

5    withheld from me.

6          Also, parole, I go to trial, parole officer

7    comes to testify against me.  Me being on parole had

8    nothing to do with this case.  The parole officer said

9    I never confessed nothing to him, yet that was using--

10   that prejudice me at trial.  So it is like-- I was

11   convicted based on all the prejudicial information that

12   was given at my trial.  I was not convicted based on

13   the evidence.  I was convicted on all the prejudicial

14   information.

15         Then on top of that, I was kept in shackles,

16   like I'm a police murderer, like I killed somebody.  I

17   never killed nobody.  I don't-- I only have a valid

18   conviction for ever shooting no nobody or cutting

19   nobody.  You have no actual valids in my record that I

20   ever did something violent to someone.  Yet I was kept

21   in shackles in the courtroom in front of the jury.  In

22   front of the jury like I am an animal or something like

23   I am a danger to the jury or to someone in the

24   courtroom.

25         So these are the things that I feel that

1   played a part, played a major part in me getting

2   convicted, not that I committed this crime.

3            THE COURT:  All right.  Thank you.

4            D.A.?

5            MR. BARBUTO:  Judge, if I may just briefly.

6            THE COURT:  Sure.

7            MR. BARBUTO:  I was not the trial counsel, so

8   I am not in a position to comment on any alleged errors

9   that may have taken place during the trial.

10            I will suggest to the Court that everything

11   that Mr. Nealy has just said, are Appellate issues.

12            THE COURT:  Right.

13            MR. BARBUTO:  And notwithstanding that I have

14   been ordered to do so, I will certainly file a Notice

15   of Appeal and file the appropriate motions therewith,

16   if any, for poor person relief and I will do so within

17   30 days as the statute requires.

18            On the issue of sentencing itself, I only ask

19   that this Court consider to give the defendant the

20   minimum amount possible which will be twelve years.

21            Thank you.

22            MR. JUNKER:  People dispute the defendant's

23   self serving view of events.  He has proven himself to

24   be a very violent individual and we ask for the maximum

25   sentence allowed by law.

- S E N T E N C E -                                                        26

1    THE COURT:  All right.

2    After reviewing all the evidence and having

3    sat in on the original trial in March of last year, I

4    have searched the record high and low to find some

5    scintilla of evidence where I should give you the

6    minimum sentence, Mr. Nealy, I cannot find it.

7    We had to send you to Suffolk County because

8    some problems in Nassau County.  You caused problems

9    out in Suffolk County Jail, we had to send you to

10   Riker's.  You caused problems in Riker's.  So they put

11   up their hands and sent you back to Nassau.

12   You during the course of the trial, you bring

13   in a prostitute who lied.  Who perjured herself during

14   the course of that trial. I find-- I wish I had the

15   vocabulary to describe the individual that you are, but

16   I don't.

17   So, therefore, it is the sentence of this

18   Court concerning the assault in the second degree, D

19   violent, a maximum sentence of no less than 25, no more

20   than life.

21   With regard to -- $1,000.00 fine, $200.00

22   surcharge and $10.00 Crime Victim Fee by civil

23   judgement.

24   Criminal possession of a weapon, a D non

25   violent, three and a half-- indeterminate sentence of

1    three and a half to seven as a prior felony offender.

2    The other one he is being sentenced naturally as a

3    prior violent felony offender.   That sentence-- these

4    sentences are concurrent to one another.

5              With regard to the misdemeanor, time served.

6              With regard to the criminal possession of a

7    weapon in the third degree, $1,000.00 fine by civil

8    judgment.

9              The Orders of Protection, you are revising

10   them now?

11             MR. JUNKER:   Yes, Judge.

12             THE COURT:   There is Orders of Protection,

13   concerning the Linera Brothers; is that correct?

14             MR. JUNKER:   Yes.

15             THE COURT:   You are to abide by these Orders

16   of Protection, they are going to be served on you.

17             MR. JUNKER:   Judge, I am handing up Orders of

18   Protection, I made them-- the date for expiration to be

19   five years after the defendant could have his earliest

20   release.

21             THE COURT:   So this Order of Protection is in

22   effect until February 10, the year 2028; is that

23   correct?

24             You are to stay away from Donald and Patrick

25   Linera, and refrain from harassing, communicating or

- S E N T E N C E -                                      28

1    having anything dealing with these individuals.

2              THE CLERK:  Mr. Nealy, you have the right to

3    appeal from this sentence and these proceedings.  If

4    you wish to appeal, you must file your Notice of Appeal

5    with the Clerk of the Court within 30 days.  If you

6    cannot afford a lawyer or the minutes of these

7    proceedings, you may make application to the Appellate

8    Division which will upon being satisfied that you

9    cannot afford the same, order that an attorney be

10   appointed and the minutes provided without any charge

11   to you, sir.

12             Your lawyer is directed by the Court to

13   advise you in full and to take the necessary steps

14   indicated by you in this regard.

15             THE COURT:  Give him a copy of my Order too.

16             THE CLERK:  I will.

17             THE COURT:  And the Orders of Protection.

18   Thank you everybody.

19             MR. BARBUTO:  Thank you, Judge, good day.

20

                 - - - o o 0 o o - - -

21

22   CERTIFIED to be a true and
     accurate transcript ONLY if
23   an original or signed copy.

24   ⎰ Richard W. Barry

25



**STATE OF NEW YORK**
**GRIEVANCE COMMITTEE FOR THE**
**TENTH JUDICIAL DISTRICT**
150 MOTOR PARKWAY
SUITE 102
HAUPPAUGE, N.Y. 11788
(631) 231-3775

RITA E. ADLER
CHIEF COUNSEL

MITCHELL T. BORKOWSKY
ROBERT A. GREEN
DEPUTY CHIEF COUNSEL

NANCY B. GABRIEL
ELIZABETH A. GRABOWSKI
STACEY J. SHARPELLETTI
MICHAEL J. KEARSE
LESLIE B. ANDERSON
MICHAEL FUCHS
MICHELE MARTINO
ROBERT H. CABBLE
DANIEL M. MITOLA
ASSISTANT COUNSEL

JOHN L. JULIANO, ESQ.
CHAIRPERSON

PAUL GIANELLI, ESQ.
VICE-CHAIRPERSON

CHRISTOPHER C. KERN
DOUGLAS K. KRONENBERG
INVESTIGATORS

September 5, 2007

Mr. William Nealy, #03A0772
Southport Correctional Facility
P.O. Box 2000
Pine City, NY   14871

Re:  File No. N-1975-07

Dear Mr. Nealy:

This will acknowledge receipt of your complaint dated August 19, 2007.

Please be advised that the function of this Committee is to process inquiries for the purpose of ascertaining whether there is evidence of unprofessional conduct which would warrant disciplinary proceedings against the attorney.  The allegations of your complaint, however, do not give the Committee cause to believe that the attorney you complain of engaged in unprofessional conduct.  Moreover, the Committee cannot render legal advice nor offer legal assistance.

If it is your feeling that your legal rights need protection, we suggest that you consult with an attorney of your own choosing.  In addition, the Committee has no authority to intervene in legal disputes nor does it have the same powers of a court to resolve such disputes.  You must seek legal redress through the court.

Accordingly, our Committee is unable to assist you.

Very truly yours,

RITA E. ADLER
Chief Counsel

MICHELE MARTINO
Assistant Counsel

MM:nj



NEW YORK STATE
**COMMISSION ON JUDICIAL CONDUCT**
61 BROADWAY
NEW YORK, NEW YORK 10006

212-809-0566    212-809-3664
TELEPHONE    FACSIMILE

www.scjc.state.ny.us

**ROBERT H. TEMBECKJIAN**
*ADMINISTRATOR & COUNSEL*

**JEAN JOYCE**
**ROGER SCHWARZ**
*SENIOR ATTORNEYS*

**MELISSA R. DIPALO**
**BRENDA CORREA**
**KATHY WU**
**KELVIN A. DAVIS**
*STAFF ATTORNEYS*

**CONFIDENTIAL**

January 30, 2008

Mr. William Neary
03-A-0772
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871

Dear Mr. Neary:

The State Commission on Judicial Conduct has received your complaint concerning the attorney who represented your case in 2001.

Your complaint will be presented to the Commission, but please note that the Commission has no jurisdiction over attorneys.

We will communicate with you again after the Commission has reviewed your letter of complaint.

For your information, we have enclosed some background material concerning the Commission, its jurisdiction and its limitations.

Very truly yours,

Lee Kiklier
Administrative Assistant